1

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: scott@bursor.com
          ltfisher@bursor.com
          swestcot@bursor.com

2

3

4

5

6

7

*Attorneys for Plaintiff*

8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11

12

FLOYD LUMAN, individually and on behalf of all others similarly situated,

13

Plaintiff,

14

v.

15

NEW VITALITY CORP. and JOE THEISMANN,

16

17

Defendants.

18

Case No. _____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

Plaintiff Floyd Luman ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendants New Vitality Corp. ("New Vitality") and Joseph Theismann (collectively, "Defendants").  Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## INTRODUCTION

1.      This is a class action lawsuit on behalf of purchasers Super Beta Prostate, which Defendants market as a treatment for the symptoms of benign prostate hyperplasia ("BPH").  Defendants' marketing and promotion of Super Beta Prostate is an elaborate hoax involving a falsified medical endorsement by Dr. Jeffrey J. Zielinski, and false claims that the product will treat the symptoms of BPH.  The product was created by Roger Mason, a convicted felon who pleaded guilty to conspiracy to distribute phencyclidine (PCP).  Defendant New Vitality describes Mr. Mason as a "research chemist."  His latest concoction, "Super Beta Prostate," is an illegal drug that contains dangerously high doses of mixed sterols, including B-sitosterol, a drug that had been marketed in Europe under the trade names Harzol® and Azuprostat®.  These compounds are no longer considered suitable for the treatment of BPH.  Indeed, in 1995, a researcher studying Harzol® wrote:

> "The effect of phytopharmaceuticals [such as B-sitosterol] on BPH is controversial because no clear mechanisms of action have been established, and their effect has been attributed to placebo responses. … Since other forms of medical treatment of BPH have been shown to be effective, <u>it is questionable whether phytopharmeceutical drugs should continue to be prescribed</u>."

R.R. Berges, *et al.* (1995) <u>The Lancet</u>, "Randomised, placebo-controlled, double-blind clinical trial of B-sitosterol in patients with benign prostatic hyperplasia" (underlining added).

2.      Jeffrey J. Zielinski, the doctor who appears to endorse Super Beta Prostate in Defendants' commercials, has recanted.  In a sworn declaration provided to the undersigned counsel, he states that he is an actor, and that he has not practiced medicine since 2009.  After an audition in which he was provided with no information about the product, he was called to a

commercial shoot and asked to don a white doctor's coat, stand in front of a green screen, and read lines from a teleprompter.



In his sworn declaration provided to the undersigned counsel, Dr. Zielinski states:

> "I was provided with a white doctor's coat with my name on it. After donning the white coat I was directed to stand in front of a green screen and to read lines from a teleprompter.  After I saw the commercials air on television, I understood that a doctor's office was superimposed on the green screen to create the illusion that I was speaking from a doctor's office.  …

> "As far as I understood, I was hired as an actor.  I was to play the role of a doctor, reading lines from a script.  And that is what I did.  I had no input in the creation of the script or the content of the advertisements.  I did not intend to provide medical advice to anyone, or to provide a medical endorsement of the product."

Dr. Zielinski continues:

> "If I were a practicing physician, I would <u>not</u> recommend Super Beta Prostate for the treatment of BPH or its symptoms.  …  I would not recommend Super Beta Prostate to anyone for any purpose.  I believe it is unsuitable for the treatment of BPH, and possibly unsafe because it is a formulation that has never been studied and it includes mixed sterols in very high doses that could cause significant adverse events."

Defendants' representation that Super Beta Prostate is endorsed by Dr. Zielinski is false.

3.      Super Beta Prostate's labeling and advertising also represents that the product "Helps to Support Healthy Urinary Flow and Function" and contains "All Natural Ingredients." Defendants advertise and market that "[b]y taking this natural supplement each day, you can start the path to getting out of the bathroom and back to your life."  Additionally, as a result of taking Super Beta Prostate, Defendants advertise that users will experience the following benefits: "Stronger Urinary Flow," "Improved Bladder Emptying," "Healthy Sleeping Habits," "Healthy Prostate Function," "Less Frequent Bathroom Trips," reducing "that sudden urge to go," "More complete bladder emptying," "Sleep[ing] more through the night," "Wak[ing] up feeling more refreshed," not needing to "get up at night as much," improved intimacy, and "Feel[ing] younger and more energetic!" (the "Express Warranties" or the "Misrepresentations").

4.      Each of the Express Warranties is false and misleading.  Super Beta Prostate is not, in fact, effective for any of these purposes.  Nor is Super Beta Prostate suitable or fit for any of these intended purposes.

5.      Furthermore, Super Beta Prostate is illegally distributed under federal law because the product's labeling, website, and advertising materials suggests the use of Super Beta Prostate for the treatment of BPH, which is a progressive disease.  Super Beta Prostate is therefore a "drug" as defined by the Federal Food, Drug, and Cosmetic Act.  *See* 21 U.S.C. § 321(g)(1)(B) and (C).  Furthermore, Super Beta Prostate falls with the definition of a "new drug" because it "is not generally recognized among experts … as safe and effective for use under the condition prescribed, recommended, or suggested."  21 U.S.C. § 321(p)(1).  Thus, without FDA approval, it is illegal to distribute Super Beta Prostate in interstate commerce.  21 U.S.C. § 355(a).

6.      Mr. Luman is a purchaser of Super Beta Prostate who assert claims for violation of the Magnuson Moss Warranty Act, breach of express warranty, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, unjust enrichment, violation of the California Consumers Legal Remedies Act ("CLRA"), violation of the California Unfair Competition Law ("UCL"), and violation of the California False Advertising Law ("FAL").

**PARTIES**

7.     Plaintiff Floyd Luman is a citizen of California.  In 2012, Mr. Luman purchased Super Beta Prostate for the treatment of his BPH symptoms based on Joe Theismann's recommendation.  After several weeks of use, Mr. Luman concluded that Super Beta Prostate was ineffective.  Mr. Luman then called New Vitality's Customer Service line to complain.  During that call, an agent explained that Super Beta Prostate takes time to work and encouraged him to continue taking the product.  Mr. Luman followed the agent's advice and continued to take Super Beta Prostate, but the product was still ineffective.

8.     Defendant New Vitality Corp. ("New Vitality") is a New York corporation with its principal place of business at 260 Smith Street, Farmingdale, NY 11735.  New Vitality is the distributor and seller of Super Beta Prostate and participated in creating the product formulation, dosage form, delivery system, branding, packaging and design, logistics and distribution, marketing, and advertising.  New Vitality's activities caused the sale of Super Beta Prostate through the Internet and retail venues including club, food, drug, mass market, and health food stores.  New Vitality endorsed, adopted, and utilized the Express Warranties and Misrepresentations to effectuate the Defendants' joint plan to market Super Beta Prostate as described herein.

9.     Defendant Joe Theismann is a citizen of Virginia residing in Fairfax County, Virginia.  Formerly a quarterback for the Washington Redskins, Mr. Theismann was a two-time Pro Bowl and quarterback of the winning team in Super Bowl XVII, and he was inducted into the College Football Hall of Fame in 2003.  Mr. Theismann is the principal endorser of Super Beta Prostate.  He appears on the company's website and in radio and television advertisements, where he describes his own struggles with the symptoms of BPH.  Mr. Theismann endorsed, adopted, and utilized the Express Warranties and Misrepresentations to effectuate the Defendants' joint plan to market Super Beta Prostate as described herein.

10.     Each of the Defendants acted jointly to perpetrate the acts described herein.  At all times relevant to the allegations in this matter, each Defendant acted in concert with, with the

knowledge and approval of, and/or as the agent of the other Defendants within the course and scope of the agency, regarding the acts and omissions alleged.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

12.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiff, as well as most members of the proposed class, are citizens of states different from the states of at least one of the Defendants.  In their commercials, Defendants represent that they sold over 5 million bottles of Super Beta Prostate to over 2 million men.

13.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions and acts giving rise to the claims herein occurred in this District.  Defendants distributed, advertised, and sold Super Beta Prostate, which is the subject of the present complaint, in this District.  Moreover, Plaintiff purchased Super Beta Prostate from Defendants in California.

## FACTS COMMON TO ALL CAUSES OF ACTION

-   Benign Prostate Hyperplasia Is A Progressive Disease That Causes
    Urinary Problems

14.     The prostate is an exocrine gland of the male reproductive system.  It surrounds the top of the urethra, where it connects to the bladder.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



This shows the prostate and nearby organs.



This shows the inside of the prostate, urethra, rectum, and bladder.

15.     The main purpose of the prostate is aid in the process of ejaculation.  The prostate's role is to secrete a slightly alkaline fluid, which is milky or white in appearance and constitutes about 50-75% of the volume of semen.  The alkaline nature of prostatic fluid help sperm survive in the vagina, which is acidic.  Additionally, sperm in prostatic fluid are also more mobile than when in seminal vesicular fluid.

16.     Another purpose of the prostate is to expel semen during the process of ejaculation. To aid in the process, the prostate contains smooth muscle fibers that expels fluid during each ejaculate fraction.

17.     Benign prostate hyperplasia is a progressive disease caused by an enlarged prostate. A healthy prostate is around the size of a walnut, but men's prostates begin to slowly grow around age thirty.

18.     The prostate's growth may be due to an increased number of cells, an increase in the size each cell, or both.  Technically, an increase in the number of cells causes benign prostate *hyperplasia*, while an increase in the size of each cell causes benign prostate *hypertrophy*.  In practice, however, urologists commonly refer to both conditions as benign prostate hyperplasia.

19.     If the prostate grows too large, it compresses the urethra and causes an obstruction. An obstruction of the urethra by the prostate, which may be partial or complete, leads to the symptoms of BPH.  The Mayo Clinic explains:  "[P]rostate gland enlargement can cause bothersome urinary symptoms.  Untreated prostate gland enlargement can block the flow of urine out of the bladder and can cause bladder, urinary tract or kidney problems."[1]

20.     The symptoms of BPH include difficulty beginning urination, being unable to completely empty the bladder during urination, feeling the need to urinate frequently, increased risk of urinary tract infections, and painful urination.  Secondary symptoms include disturbed sleep due to frequent urination, increased risk of bladder stones from urine left in the bladder, and sexual dysfunction.

21.     An estimated 50% of men have histologic evidence of BPH by age 50 years and 75% by age 80 years.  In 40-50% of these cases, BPH becomes clinically significant.

22.     After lifestyle changes, prescription medicine is the first-line treatment for BPH. There is a wide range of prescriptions available for BPH.  Alpha-blockers, which relax the prostate to reduce obstruction of the urethra, include tamsulosin (sold as Flomax), terazosin (sold as Hytrin), doxazosin mesylate (sold by Pfizer as Cardura), alfuzosin (sold by Sanofi Aventis as Uroxatral), and silodosin (sold as Rapaflo).  Another common line of prescriptions are 5α-reductase inhibitors, which helps limit the production of DHT, a hormone responsible for enlarging

---

[1] *Prostate Gland Enlargement*, Mayo Clinic, http://www.mayoclinic.com/health/prostate-gland-enlargement/DS00027.

the prostate.  These medications include finasteride (sold by Merck as Proscar) and dutasteride (sold by GlaxoSmithKline as Avodart).

23.     If prescription medications are ineffective, or if their side effects are intolerable, the next line of treatment includes office-based procedures performed by a urologist.  The two most common FDA-approved procedures are transurethral microwave thermotherapy ("TUMT") and transurethral needle ablation ("TUNA").  In both of these procedures, local anesthetic is applied and a catheter is slowly inserted into the urethra until it reaches the prostate.  Then, the catheter head outputs a known quantity of heat energy, causing cell death (necrosis) to the prostate.  As these cells die, the prostate shrinks.

24.     Surgery is the final option.  The most common type of surgery, also the mainstay of definitive treatment of BPH, is transurethral resection of prostate ("TURP").  In this procedure, the surgeon will remove part or all of the prostate through the urethra.  Unfortunately, surgery may cause serious complications, such as impotence and incontinence.

-   Defendants Expressly Represented That Super Beta Prostate Will Cure BPH

25.     Defendant New Vitality ran a series of advertisements that claimed Super Beta Prostate would treat and cure BPH.  Stills from one of these advertisements are incorporated into the text below.

26.     One of these advertisements begins: "Dear friend in distress.  Have all the efforts to treat your prostate problem proven unsuccessful?  Are you tired of staying awake all night to make hasty trips to the restroom?  An estimated 25 million men from the age group of 40-80 years experience benign prostatic hyperplasia, the benign enlargement of the prostate."

1
2
3
4
5
6
7
8
9
10
11
12



13     27.    The advertisement continues: "This condition has several consequences, the most

14 stigmatized of which are nocturia and incontinence.  Nocturia, urination at night, can ruin sleep and

15 make an individual exhausted.  Worse is incontinence, where there is an involuntary leakage of

16 urine from the bladder.  Men with an enlarged prostate also report persistent feeling of bladder

17 fullness, as they are unable to empty the bladder sufficiently, even after frequent urination.  These

18 symptoms are typical of any prostate problem and can be very distressing.  Loss of active sexual

19 function only adds to existing woes."

20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12



13    28.    The advertisement continues: "The health effects apart, efforts to treat prostate

14  inflammation often ends up in removal of the gland.  If done at an inappropriate age, removal can

15  lead to erectile dysfunction, bowel incontinence, and persistent urinary incontinence."

16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12



13      29.      The advertisement continues: "But wait!  Surgery is not the option [sic] to your

14  problems."

15
16
17
18
19
20
21
22
23
24
25



26      30.      The advertisement continues: "Introducing Super Beta Prostate, an all-natural

27  solution to prostate enlargement.  Super Beta Prostate contains beta-sitosterol, a plant extract that

28

1   reduces prostate swelling. It also contains twelve additional nutrients that help improve prostate

2   health, body immunity, and urinary flow."



14      31.     Defendant New Vitality's advertisement continues, "Beta-sitosterol binds to the

15  prostate gland and improves the health of prostate cells directly. And without any side effects! It

16  also cuts down on cholesterol, which improves blood flow. Twelve other nutrients include zinc,

17  copper, manganese, iodine, selenium, vitamin D, and others help [sic] in restoring prostate health

18  and normal urinary function. Enhanced bladder control puts an end to nocturia and incontinence.

19  Super Beta Prostate restores your sexual vigor. What are you waiting for?"

1
2
3
4
5
6
7
8
9
10
11
12



13      32.     Each of these statements is false and misleading.  Super Beta Prostate does not, in

14  fact, treat the symptoms of BPH, or produce any of the effects described in this advertisement.

15      33.     In other advertisements, Defendants do not expressly refer to BPH, but instead

16  discuss the symptoms of an "aging prostate," such as frequent urination, waking up regularly at

17  night to urinate, and inadequate emptying of the bladder.  These are the *exact symptoms* of BPH.

18  They are <u>not</u> associated with normal "aging" of the prostate.

19      -   <u>The "Reknowned Research Chemist" That Created Super Beta Prostate</u>
            <u>Is A Convicted Felon</u>
20
21      34.     Defendants' website identifies an individual named Roger Mason as "a renowned

22  research chemist," whose research "has culminated in several acclaimed formulas; most

23  distinguished is [sic] Super Beta Prostate."  Defendants represent that "Super Beta Prostate was

24  formulated by research chemist Roger Mason."  Defendants also represents that "Roger [Mason]

25  has been an integral part of the natural health industry for more than 30 years.  He has done

26  extensive research into natural health, life extension and healing yourself naturally with whole

27  foods, proven supplements, natural hormones, and exercise."[2]

28  _____
[2] *Roger Mason: The Man Behind The Magic*, Super Beta Prostate Website (Mar. 28, 2012),
http://web.archive.org/web/20120328124131/http://www.betaprostate.com/roger-mason.aspx

35.     Roger Mason is not a "renowned research chemist." He is not a doctor. He is not a physician's assistant. He is not a nurse. He has no training, education or experience relevant to the treatment of BPH or its symptoms. He has no training, education or experience relevant to the development of drugs or dietary supplements. He has never held a job in any of these fields.

36.     Roger Mason is a convicted felon. In 1975 he pleaded guilty to conspiracy to distribute phencyclidine ("PCP"). In May 1985, while on parole for his prior drug convictions, Roger Mason was arrested for manufacturing 326 counterfeit credit cards, which were used to make at least $10,000 of fraudulent purchases. Roger Mason was released again on parole around 1993.

-       Joe Theismann's Endorsement

37.     Joe Theismann appears in Super Beta Prostate advertisements and purports to describe his personal struggle with the symptoms of BPH. Stills from one of these advertisements are incorporated into the text below. On information and belief, Mr. Theismann has never been diagnosed with BPH or its symptoms. Nor was he a bona fide user of Super Beta Prostate. His statements concerning his symptoms are completely fabricated.

38.     Instead of directly referring to BPH, Mr. Theismann describes the disease and its symptoms are those of an "aging prostate." But an aging prostate is not a medical condition that would cause these symptoms. The symptoms described by Mr. Theismann are the classic symptoms of BPH. Indeed, they are *identical* to the symptoms described in New Vitality's other advertisements (discussed above) that expressly promote Super Beta Prostate as a treatment for BPH.

39.     In one of the advertisements, Mr. Theismann begins: "Hi, I'm Joe Theismann. And no matter what stadium I broadcast from, I would always have to find the closest bathroom, just in case I had that sudden urge to go. My prostate was giving me fits."

---

(accessed by searching http://betaprostate.com/ in the Internet Archive index, navigating to the archive from Mar. 28, 2012, and clicking the link titled "Roger Mason").





40.     Mr. Theismann continues: "But then I heard about Super Beta Prostate's Nationwide Million Bottle Giveaway, and I got a free bottle.  What a difference it made.  I don't have to go as often, and I don't need to get up at night as much.  Now I wake up refreshed and ready to tackle anything."



41.     Mr. Theismann continues: "Super Beta Prostate has sold over 5 million bottles, helping over 2 million men, because 50% of men over 50, and 80% of men over 80 have prostate issues.  Chances are you need Super Beta Prostate."  These statistics are virtually identical to the rates of BPH in adult men.



42.     Mr. Theismann continues: "What's so special about Super Beta Prostate?  …  It's all-natural, made from a scientific breakthrough plant sterol called beta-sitosterol."  However, neither Super Beta Prostate, nor its ingredient, beta-sitosterol, is safe or effective for the treatment of BPH.

43.     Mr. Theismann is followed on screen by Dr. Zielinski, an actor who is portraying a doctor, and who appears to endorse the product.

44.     Defendant's website at http://www.betaprostate.com/ includes Mr. Theismann's likeness and image on nearly every page.[3]

_____

[3] One of Mr Theismann's commercials refers to "SuperBeta.com," but this website is an automatic redirect to http://www.betaprostate.com/.



45.     On a page entitled "About Joe Theismann," Mr. Theismann makes the same representations that he makes in the television commercials. He explains, "Even when I first started broadcasting, I'd be hit with sudden urges to go – so I always had to know where the closest bathroom was. My prostate was really getting to me. Does any of this sound familiar? That's because many men over 40 have issues that come with an aging prostate. … [T]here's no reason to accept these issues that come with an aging prostate. Take Super Beta Prostate to help you support your quality of life – both during the day and at night. I'm so glad I tried it, and you will be too."

46.     Defendants' website also contains the image and likeness of Jeff Zielinski and attributes statements to him that he did not make, or made only when reading from a script he did not prepare.

47.     The statements attributed to Zielinski include: "Your prostate starts as just a little gland, but as you get older it can have a big impact on your quality of life. That might be why so many men over 40 experience changes in their bathroom habits: they need to go much more each day, they have a weaker urine stream, or they have incomplete bladder emptying. A lot of men also notice they're waking up at night once, twice, or more to urinate." Even though this page does not use the medical term "benign prostate hyperplasia," it precisely describes the cause and symptoms of BPH.

48.     Similarly, Defendants' website has a checklist of "questions [men over 40] must ask." These questions include: "Am I urinating more frequently during the day? Do I wake up at night to urinate? When I urinate, do I empty the bladder completely? Is my romantic life

suffering?  Do I also keep a lookout for where the nearest bathroom is?"  The website explains that if one answers yes to any of these questions, then the reader may be living with an "aging prostate."  If this is the case, then "activities like sports could be constantly interrupted by an urge to go, and you may not feel fully rested when you wake up each morning."  Again, this page precisely describes the symptoms of BPH.

49.     Defendants' website also promises that Super Beta Prostate will treat or cure the symptoms of BPH.  Specifically, Defendants promise that it will result in:  "Stronger Urinary Flow," "Improved Bladder Emptying," promote "Healthy Sleeping Habits," promote "Healthy Prostate Function," "Less Frequent Bathroom Trips," "More complete bladder emptying," "Sleep[ing] more through the night," "Wak[ing] up feeling more refreshed," and "Feel[ing] younger and more energetic!"

50.     Each of these statements is false and misleading because Super Beta Prostate does not, in fact, treat the symptoms of BPH.  Nor does it produce the effects described.

-   Super Beta Prostate's Label

51.     The label for Super Beta Prostate includes claims that it "Helps to Support Healthy Urinary Flow and Function," "Reduces Frequent Urination," "Helps Aging Prostate," and "Supports Continuous Sleep."  Each of these statements directly addresses a symptom of BPH.  Each of these statements is false and misleading because Super Beta Prostate does not, in fact, treat the symptoms of BPH.  Nor does it produce the effects described.

-   Super Beta Prostate Is Illegally Distributed Under Federal Law

52.     Under the Food, Drug, And Cosmetic Act ("FDCA"), 21 U.S.C. § 321(g)(1)(B), articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease are drugs.  Under § 321(g)(1)(C), articles intended to affect the structure or any function of the body of man are also classified as drugs.  Super Beta Prostate's labeling, website, and advertising materials suggests the use of Super Beta Prostate for the treatment of BPH.  Super Beta Prostate is therefore a "drug" as defined by 21 U.S.C. § 321(g)(1)(B) and (C).

53.     Super Beta Prostate falls with the definition of a "new drug" because it "is not generally recognized among experts … as safe and effective for use under the condition prescribed,

recommended, or suggested." 21 U.S.C. § 321(p)(1).  Thus, without FDA approval, it is illegal to distribute Super Beta Prostate in interstate commerce.  21 U.S.C. § 355(a).

54.     Similarly, federal law prohibits marketers of dietary supplements from making any claim suggesting use of the supplement for the diagnosis, mitigation, treatment or cure of a disease unless the claim is specifically authorized by an FDA finding that there is "significant scientific agreement" to support the claim, or the claim is based on "authoritative statements" from certain federal scientific bodies, such as NIH and the National Academy of Sciences.  *See* Dietary Supplement Health Education Act ("DSHEA"), 21 U.S.C. § 343(r)(3).

55.     The claims identified above specifically suggest the use of Super Beta Prostate to treat the symptoms of benign prostate hyperplasia.  These claims have not been authorized by the FDA or any scientific body.

56.     Super Beta Prostate is thus "misbranded" and bears a "false or misleading label" under 21 U.S.C. § 343.

## CLASS REPRESENTATION ALLEGATIONS

57.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased Super Beta Prostate, excluding those that made such purchase for purpose of resale (the "Class").

58.     Plaintiff also seeks to represent a subclass of all Class members who purchased the product in California (the "California Subclass").

59.      Defendants state they sold over 5 million bottles of Super Beta Prostate to over 2 million men.  Accordingly, members of the Class and Subclasses are so numerous that their individual joinder herein is impracticable.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third party retailers and vendors.

60.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions

include, but are not limited to whether Defendants' labeling, marketing and promotion of Super Beta Prostate is false, misleading, and unsubstantiated.

61.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendants' false, misleading and unsubstantiated marketing and promotional materials, purchased Super Beta Prostate, and suffered a loss as a result of that purchase.

62.     Plaintiff is an adequate representative of the Class and Subclasses because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

63.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and Subclass members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### Violation Of Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

64.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

65.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against all Defendants.

66.     Super Beta Prostate is a consumer product as defined in 15 U.S.C. § 2301(1).

67.     Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

68.     Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

69.     In connection with the sale of Super Beta Prostate, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), by making the Express Warranties.

70.     In fact, Super Beta Prostate does not conform to the Express Warranties because each of the Express Warranties is false and misleading because Super Beta Prostate does not, in fact, treat the symptoms of BPH.

71.     By reason of Defendants' breach of warranties, Defendants violated the statutory rights due Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiff and Class members.

72.     Plaintiff and Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased Super Beta Prostate if the true facts had been known.

## COUNT II

### Breach Of Express Warranty

73.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

74.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against all Defendants.

75.     Defendants, as the designer, manufacturer, marketers, distributors, or sellers expressly warranted that Super Beta Prostate was fit for its intended purpose by making the Express Warranties.

76.     In fact, Super Beat Prostate is not fit for such purposes because each of the Express Warranties is false and misleading because Super Beta Prostate does not, in fact, treat the symptoms of BPH.

77.     Plaintiff and Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased Super Beta Prostate if the true facts concerning its lack of safety and efficacy had been known.

## COUNT III

### Breach Of Implied Warranty Of Merchantability

78.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

79.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against all Defendants.

80.     Defendants as the designer, manufacturer, marketers, distributors, and/or sellers impliedly warranted that Super Beta Prostate was fit for its intended purpose as a safe and effective treatment for BPH.

81.     Defendants breached the warranty implied in the contract for the sale of Super Beta Prostate because it could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because there is no competent and reliable scientific evidence that Super Beta Prostate is a safe and effective treatment for the symptoms of BPH.  As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

82.     In reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiff and Class members purchased Super Beta Prostate for use as a treatment for the symptoms of BPH.

83.     Super Beta Prostate was not altered by Plaintiff and Class members.

84.     Super Beta Prostate was defective when it left the exclusive control of Defendants.

85.     Defendants knew Super Beta Prostate would be purchased and used without additional testing for safety or efficacy by Plaintiff and Class members.

86.     Super Beta Prostate was defectively designed and unfit for its intended purpose, and Plaintiff and Class members did not receive the goods as warranted.

87.     As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and Class members have been injured and harmed because they would not have purchased Super Beta Prostate if the true facts concerning its lack of safety and efficacy had been known.

## COUNT IV

### Breach Of Implied Warranty Of Fitness For A Particular Purpose

88.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

89.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against all Defendants.

90.     Defendants marketed, distributed, and/or sold StarKist Tuna with implied warranties that it was fit for its intended purpose as a safe and effective treatment for the symptoms of BPH.

91.     Plaintiff and Class members purchased Super Beat Prostate in reliance upon Defendants' implied warranties.

92.     Super Beta Prostate was not altered by Plaintiff or Class members.

93.     As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and Class members have been injured and harmed because they would not have purchased Super Beta Prostate if the true facts concerning its lack of safety and efficacy had been known.

## COUNT V

### Unjust Enrichment

94.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

95.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against all Defendants.

96.     Plaintiff and Class members conferred benefits on Defendants by purchasing Super Beta Prostate.

97.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of Super Beta Prostate.  Retention of those moneys under these circumstances is unjust and inequitable because Defendants misrepresented that Super Beta

Prostate was a safe and effective treatment for the symptoms of BPH when in fact it was not, which caused injuries to Plaintiff and Class members because they would not have purchased Super Beta Prostate if the true facts had been known.

98.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## COUNT VI

### Violation Of California's Consumers Legal Remedies Act,

### California Civil Code §§ 1750, *et seq.*

99.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

100.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against all Defendants.

101.    California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Defendants violated this provision by making the Misrepresentations and by suggesting that Dr. Zielinski endorsed the product when in fact he did not.

102.    Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Defendants violated this provision by making the Misrepresentations.

103.    Plaintiff and the California Subclass members suffered injuries caused by Defendants' misrepresentations because they would not have purchased Super Beta Prostate if the true facts had been known.

104.    On January 21, 2013, prior to the filing of this Complaint, a CLRA notice letter was served on Defendants which complied in all respects with California Civil Code § 1782(a). Plaintiff Floyd Luman, by and through his counsel, sent Defendants a letter via certified mail,

return receipt requested, advising Defendants they were in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.

105.    Wherefore, Plaintiff seeks damages, restitution, and injunctive relief for this violation of the CLRA.

### COUNT VII

### Violation Of California's Unfair Competition Law,

### California Business & Professions Code §§ 17200, *et seq.*

106.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

107.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against all Defendants.

108.    Defendants are subject to the Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising…"

109.    Defendants' conduct, described herein, violated the "unlawful" prong of the UCL by violating the Magnuson-Moss Warranty Act, CLRA, FAL, FDCA, DSHEA, and regulations promulgated thereunder.

110.    Defendants' conduct, described herein, violated the "unfair" prong of the UCL by violating the policy or spirit of the Magnuson-Moss Warranty Act, CLRA, FAL, FDCA, DSHEA, and regulations promulgated thereunder.

111.    Defendants' conduct, described herein, violated the "fraudulent" prong of the UCL by making the Misrepresentations.

112.    Plaintiff and California Subclass members suffered lost money or property as a result of Defendants' UCL violations because they would not have purchased Super Beta Prostate if the true facts concerning its lack of safety and efficacy had been known.

## COUNT VIII

### Violation Of California's False Advertising Law,

### California Business & Professions Code §§ 17200, *et seq.*

113.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

114.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against all Defendants.

115.     California's False Advertising Law, Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

116.      Defendants committed acts of false advertising, as defined by §17500, by making the Misrepresentations.

117.      Defendants knew or should have known, through the exercise of reasonable care that the Misrepresentations were untrue and misleading.

118.     Defendants' actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

119.     Plaintiff and California Subclass members suffered lost money or property as a result of Defendants' FAL violations because they would not have purchased Super Beta Prostate if the true facts had been known.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a.      For an order certifying the nationwide Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class

1  and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and

2  Subclass members;

3  b.  For an order declaring the Defendants' conduct violates the statutes referenced

4  herein;

5  c.  For an order finding in favor of Plaintiff, the nationwide Class, and the Subclass on

6  all counts asserted herein;

7  d.  For compensatory and punitive damages in amounts to be determined by the Court

8  and/or jury;

9  e.  For prejudgment interest on all amounts awarded;

10  f.  For an order of restitution and all other forms of equitable monetary relief;

11  g.  For injunctive relief as pleaded or as the Court may deem proper; and

12  h.  For an order awarding Plaintiff and the Class and Subclass his reasonable attorneys'

13  fees and expenses and costs of suit.

14  **<u>DEMAND FOR TRIAL BY JURY</u>**

15  Plaintiff demands a trial by jury of all issues so triable.

16

17  Dated:  April 4, 2013                    Respectfully submitted,

18                                           **BURSOR & FISHER, P.A.**

19

20                                           By:  _____/s/_____

21                                                        L. Timothy Fisher

22                                           Scott A. Bursor (State Bar No. 276006)
                                             L. Timothy Fisher (State Bar No. 191626)
23                                           Sarah N. Westcot (State Bar No. 264916)
                                             1990 North California Boulevard, Suite 940
24                                           Walnut Creek, CA  94596
                                             Telephone: (925) 300-4455
25                                           Facsimile:  (925) 407-2700
                                             E-Mail: scott@bursor.com
26                                                      ltfisher@bursor.com
                                                        swestcot@bursor.com
27

28                                           *Attorneys for Plaintiff*

---

CLASS ACTION COMPLAINT                                                    27

I, Floyd Luman, declare as follows:

1.      I am a plaintiff in this action and a citizen of the State of California.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.      The complaint filed in this action is filed in the proper place for trial under California Civil Code Section 1780(d) in that Defendants conduct a substantial amount of business in this District.

3.      While living in California, I purchased Super Beta Prostate for personal consumer use.  I read the label for Super Beta Prostate, and purchased it in reliance on the claims that it would treat the symptoms of benign prostate hyperplasia.  I would not have purchased Super Beta Prostate had I known the true facts concerning its safety, efficacy, and failure to comply with FDA regulations.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on March _18_, 2013 at _Rancho Murieta_, California.

_____
FLOYD LUMAN