MANATT, PHELPS & PHILLIPS, LLP
BRAD W. SEILING (Bar No. CA 143515)
E-mail:  bseiling@manatt.com
ADRIANNE E. MARSHACK (Bar No. CA 253682)
E-mail:  AMarshack@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA  90064-1614
Telephone:  (310) 312-4000
Facsimile:  (310) 312-4224

Attorneys for Defendant
NAC MARKETING COMPANY, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLOYD LUMAN and JOEL AMKRAUT, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>      vs.<br><br>NAC MARKETING COMPANY, LLC d/b/a/ NEW VITALITY and JOE THEISMANN,<br><br>        Defendants. | No.  13-CV-00656-KJM-AC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NAC MARKETING COMPANY, LLC'S MOTION TO DISMISS PLAINTIFFS FLOYD LUMAN'S AND JOEL AMKRAUT'S FIRST AMENDED PUTATIVE CLASS ACTION COMPLAINT**<br><br>Assigned to the Hon. Kimberly J. Mueller, Courtroom 3<br><br>**Hearing**<br>Date: June 28, 2013<br>Time: 10:00 a.m.<br>Location: Courtroom 3<br><br>Complaint filed: April 4, 2013 |

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

13-cv-00656— MEMO. OF P&A ISO NAC
MARKETING'S MOTION TO DISMISS FAC

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   STATEMENT OF FACTS ......................................................................... 2

    A.    Plaintiffs' Allegations .................................................................... 2

    B.    NAC's Advertising of Super Beta Prostate .................................... 3

III.  ALL OF PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ............... 4

    A.    The Complaint Should Be Dismissed Under Federal Rule of Civil Procedure 12(b)(1) Because Plaintiffs Lack Standing And Their Claims Are Moot ........................................................................................ 4

        1.    Plaintiffs' Monetary Claims Fail Because They Received a Refund of the Purchase Price (If Any) and Shipping Charges .............................. 5

        2.    Plaintiffs Lack Standing to Seek Injunctive Relief ..................................... 6

        3.    Alternatively, Plaintiffs Lack Standing To Pursue False Advertising Claims for Advertising They Never Saw and Did Not Rely On ................ 7

    B.    The FAC Should Be Dismissed Because the FDA Has Primary Jurisdiction to Resolve the Underlying Issues on All of Plaintiffs' Claims ............................. 8

        1.    Congress Created a Comprehensive Regulatory Scheme to Govern Issues Relating to Dietary Supplements and Drugs and Assigned Enforcement Authority Exclusively to the FDA .......................................... 8

        2.    The Issues Raised Within The FAC Fall Squarely Within the Regulatory Power of the FDA and Require the FDA's Expertise and Uniformity in Administration ............................................................ 10

            a.    Whether a product is properly classified as a "food" or "drug" falls squarely within the FDA's primary jurisdiction ....... 10

            b.    The issue of whether a product is a "new drug" under the FDCA is within the primary jurisdiction of the FDA .................. 11

            c.    The FDA has primary jurisdiction over issues relating to "safety and efficacy" of products governed by the FDCA .......... 12

    C.    Plaintiffs' "Lack of Substantiation" Theory Does Not State a Viable Claim Under California Law ................................................................... 14

    D.    Each of Plaintiffs' Individual Claims Fails as a Matter of Law ........................... 16

        1.    The Magnuson-Moss Warranty Act Does Not Apply ............................. 17

        2.    Plaintiffs' Breach of Express Warranty Claim Fails Because Plaintiff Does Not Allege the Exact Terms of the Alleged Warranty ....... 17

        3.    Plaintiffs' Breach of Implied Warranty Claims Fail Because Plaintiffs Do Not Allege Sufficient Facts To State a Claim .................... 18

        4.    Plaintiffs' Fifth Count for Unjust Enrichment Fails Because "Unjust Enrichment" Is Not a Cognizable Cause of Action in California ............. 19

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

i

13-cv-00656— MEMO. OF P&A ISO NAC
MARKETING'S MOTION TO DISMISS FAC

**TABLE OF CONTENTS**
**(continued)**

**Page**

      **5.**    Plaintiffs' CLRA, UCL, and FAL Claims Fail Because Plaintiffs Have Failed to Sufficiently Allege That They Suffered Injury As a Result of Defendants' Advertising and Their Lack of Substantiation Theory is Not Actionable Under California Law.....................................19

**IV.**    CONCLUSION ................................................................................................20

CASES

*Aaronson v. Vital Pharmaceuticals, Inc.*,
   2010 WL 625337 (S.D. Cal., Feb. 17, 2010) ................................................................. 13, 14

*Am. Suzuki Motor Corp. v. Superior Court*,
   37 Cal. App. 4th 1291 (1995)........................................................................................ 18, 19

*Arizona Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Intrn., Inc.*,
   421 F.3d 981 (9th Cir. 2005)............................................................................................... 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................. 17

*Barrera v. Pharmavite, LLC*,
   No. CV 2:11-04153 (C.D. Cal. Sept. 19, 2011) ........................................................... 15, 16

*Bates v. General Nutrition Centers, Inc.*,
   F. Supp. 2d, 2012 WL 4857550 (C.D. Cal. Oct. 12, 2012) ................................................ 17

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007)................................................................................................. 4

*Bauer v. Tacey Goss, P.S.*,
   2012 WL 2838834 (N.D. Cal. July 10, 2012) ..................................................................... 16

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................. 17

*Biotics Research Corp. v. Heckler*,
   710 F.2d 1375 (9th Cir. 1983)................................................................................... 9, 10, 11

*Bosinger v. Belden CDT, Inc.*,
   358 F. App'x 812 (9th Cir. 2009) ........................................................................................ 19

*Bower v. AT & T Mobility, LLC*,
   196 Cal. App. 4th 1545 (2011).............................................................................................20

*Braintree Laboratories, Inc. v. Nephro-Tech, Inc.*,
   1997 WL 94237 (D. Kan. Feb. 26, 1977) ........................................................................... 11

*Brandon v. National R.R. Passenger Corp. Amtrak*,
   2013 WL 800265 (C.D. Cal. March 1, 2013) ....................................................................... 5

*Broam v. Bogan*,
   320 F.3d 1023 (9th Cir. 2003)............................................................................................. 17

*Cammermeyer v. Perry*,
   97 F.3d 1235 (9th Cir.1996)................................................................................................... 6

*Campion v. Old Republic Home Protection Co.*,
   Inc. --- F. Supp. 2d ___, 2012 WL 992104 (S.D. Cal. Mar. 23, 2012) ................................. 7

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

13-cv-00656— MEMO. OF P&A ISO NAC
MARKETING'S MOTION TO DISMISS FAC

*Cattie v. Wal-Mart Stores, Inc.,*
  504 F. Supp. 2d 939 (S.D. Cal. 2007) ................................................................. 7

*Chavez v. Nestle USA, Inc.,*
  2011 WL 2150128 (C.D. Cal. May 19, 2011) .................................................. 15

*CIBA Corp. v. Weinberger,*
  412 U.S. 640 (1973) .......................................................................................... 12

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) .............................................................................................. 6

*Clark v. Time-Warner Cable,*
  523 F.3d 1110 (9th Cir. 2008)............................................................................. 8

*Diamond v. Charles,*
  476 U.S. 54 (1985) .............................................................................................. 6

*Dietary Supplemental Coalition v. Sullivan,*
  978 F.2d 560 (9th Cir. 1992).............................................................................. 10

*Foster v. Carson,*
  347 F.3d 742 (9th Cir. 2003)............................................................................... 4

*Fraker v. Bayer Corp.,*
  2009 WL 5865687 (E.D. Cal. Oct. 6, 2009), *8-9 .................................. 14, 15, 18

*Hairston v. South Beach Beverage Co.,*
  2012 WL 1893818 (C.D. Cal., May 18, 2012) ................................................. 17

*Harlan v. Roadtrek Motorhomes, Inc.,*
  2009 WL 928309 (S.D. Cal. Apr. 2, 2009).........................................................19

*Healthpoint Ltd. v. Stratus Pharmaceuticals, Inc.,*
  273 F. Supp. 2d 769 (W.D. Tex. 2001)...............................................................14

*Hodgers-Durgin v. de la Vina,*
  199 F.3d 1037 (9th Cir. 1999)............................................................................. 6

*IMS Ltd. v. Califano,*
  453 F. Supp. 157 (C.D. Cal. 1977) .................................................................... 12

*Johns v. Bayer Corp.,*
  2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ......................................................... 8

*Kanter v. Warner-Lambert Co.,*
  99 Cal. App. 4th 780 (2002)............................................................................... 17

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009)............................................................................. 8

*Kingman Reef Atoll Investments, L.L.C. v. United States,*
  541 F.3d 1189 (9th Cir. 2008)............................................................................. 4

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

13-cv-00656— MEMO. OF P&A ISO NAC
MARKETING'S MOTION TO DISMISS FAC

*Kizer v. County of San Mateo,*
   53 Cal.3d 139 (1991) ................................................................................ 6

*Laster v. T-Mobile USA, Inc.,*
   2009 WL 4842801 (S.D. Cal. Dec. 14, 2009)............................................ 7

*Lewis v. Cont'l Bank Corp.,*
   494 U.S. 472 (1990) ............................................................................. 4, 6

*McNair v. Synapse Group, Inc.,*
   672 F.3d 213 (3d Cir. 2012) ..................................................................... 7

*Nat. Counsel Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.,*
   107 Cal. App. 4th 1336 (2003).................................................... 14, 15, 20

*Neutraceutical Corp. v. Von Eschenbach,*
   459 F.3d 1033 (10th Cir. 2006)............................................................... 13

*Randhawa v. Skylux Inc.,*
   2012 WL 5349403 (E.D. Cal. Oct. 26, 2012) .......................................... 19

*Russell v. U.S.,*
   2009 WL 4050938 (N.D. Cal. Nov. 20, 2009)........................................... 5

*Sanders v. Apple Inc.,*
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................... 7, 8

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.,*
   343 F.3d 1036 (9th Cir. 2003).................................................................. 4

*Sole Energy Co. v. Petrominerals Corp.,*
   128 Cal. App. 4th 212 (2005)................................................................... 6

*Spencer–Lugo v. INS,*
   548 F.2d 870 (9th Cir. 1977) (per curiam)............................................... 5

*Stanley v. Bayer Healthcare LLC,*
   2012 WL 1132920 (S.D. Cal. Apr. 3, 2012) ......................... 15, 16, 17, 18

*Stearns v. Ticketmaster, Inc.,*
   655 F.3d 1013 (9th Cir. 2011.)................................................................ 20

*Tosh-Surryhne,*
   2011 WL 4500880, *5 (E.D. Cal. Sept. 27, 2011) ................................... 5

*Walker v. GEICO Gen. Ins. Co.,*
   2007 WL 499660 (E.D. Cal. Feb. 12, 2007) *aff'd*, 558 F.3d 1025 (9th Cir. 2009)................ 19

*Weinberger v. Bentex Pharmaceuticals, Inc.,*
   412 U.S. 645 (1973) ................................................................. 9, 11, 12, 13

*Williams v. Beechnut Nutrition Corp.,*
   185 Cal. App. 3d 135 (1986)............................................................ 17, 18

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

v

13-cv-00656— MEMO. OF P&A ISO NAC
MARKETING'S MOTION TO DISMISS FAC

## STATUTES

21 C.F.R. § 10.25 ........................................................................................... 9

21 C.F.R. § 10.30 ........................................................................................... 9

21 C.F.R. § 119.1 ......................................................................................... 13

15 U.S.C. § 2301 ..................................................................................... 3, 17

15 U.S.C. § 2311 ......................................................................................... 17

21 U.S.C. § 301 .............................................................................................. 8

21 U.S.C. § 321 ..................................................................................... 10, 12

21 U.S.C. § 331 ........................................................................................... 10

21 U.S.C. § 332 .............................................................................................. 9

21 U.S.C. § 335b ........................................................................................... 9

21 U.S.C. § 337 ..................................................................................... 9, 13

21 U.S.C. § 342 ..................................................................................... 9, 13

21 U.S.C. § 343 ........................................................................................... 10

Cal. Bus & Prof. Code § 17200 ..................................................................... 3

Cal. Bus. & Prof. Code § 17204 ................................................................... 19

Cal. Bus & Prof. Code § 17500 ..................................................................... 3

Cal. Civ. Code § 1750 ................................................................................... 3

Cal. Comm. Code § 2314 ............................................................................. 18

Cal. Comm. Code § 2315 ............................................................................. 18

Pub. L. No. 103-417, 108 Stat. 4325-35 ...................................................... 8

## RULES

Fed. R. Civ. P. 12(b)(1) ................................................................................. 4

Fed. R. Civ. P. 12(b)(6) ............................................................................... 16

Fed. R. Civ. P. 12(h)(3) ................................................................................. 4

Fed. R. Civ. P. 9(b) ........................................................................................ 8

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

vi

13-cv-00656— MEMO. OF P&A ISO NAC
MARKETING'S MOTION TO DISMISS FAC

## I. INTRODUCTION

Plaintiffs' first amended complaint ("FAC") is a virtual carbon copy of the original complaint that defendant NAC Marketing Company, LLC ("NAC") moved to dismiss. The cosmetic changes to the FAC do not remedy the numerous fatal defects raised in NAC's first motion. Plaintiffs apparently have nothing to add to their defective allegations and deficient legal theories. Instead, their primary changes consist of adding a new plaintiff who, like the first one, has no claim, and omitting allegations in a vain attempt to hide the defects in their claims. Such transparent pleading tactics do not save their FAC from dismissal. The Court should put an end to this case and dismiss the FAC with prejudice.

In response to NAC's argument that Plaintiff Luman lacked standing because he received a refund, Plaintiffs added a new plaintiff who has the same problem. Joel Amkraut never paid for Super Beta Prostate; the only bottle he received was a promotional sample. He ordered his first and only bottle of Super Beta Prostate *after* this case was filed, and he received the product just a week before he decided to join the case. Both Plaintiffs lack standing to sue on their own behalf or to represent a putative class.

Like the original complaint, the FAC also seeks to "shoehorn" a regulatory matter into a putative class action lawsuit. Through this action, Plaintiffs are attempting to regulate conduct that is covered by a complex and comprehensive regulatory scheme administered by the federal Food and Drug Administration ("FDA"). The FAC alleges violations of numerous regulatory provisions in the federal Food, Drug & Cosmetics Act ("FDCA"), such as the alleged "misbranding" of Super Beta Prostate as a dietary supplement when it allegedly is a "drug" or a "new drug" under the FDCA. Each of Plaintiffs' claims call for factual and legal determinations that should be resolved by the FDA, guided by its technical expertise and policy objectives. The primary jurisdiction doctrine thus mandates dismissal of this regulatory action.

In addition, Plaintiffs inexplicably continue to rely on an advertisement (described in ¶¶ 26-33) that appeared briefly on a website – thesuperbetaprostate.org – that was not owned, operated or controlled by Defendants, and was not authorized by Defendants. Plaintiffs' continued reliance on this third party advertisement is particularly puzzling, because the ad

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

13-cv-00656— MEMO. OF P&A ISO NAC
MARKETING'S MOTION TO DISMISS FAC

appeared only *after* Luman stopped his orders, and was taken down over a month *before* Amkraut placed his single trial order. Neither Plaintiff alleges that he saw this third party advertisement. The absence of allegations directly tying Plaintiffs to the only ad that allegedly referred to the treatment of benign prostate hyperplasia ("BPH") confirms that this is a regulatory action masquerading as a putative class action.

And, as pointed out in detail in the original motion, Plaintiffs clearly are seeking to proceed on a "lack of substantiation theory" – alleging that NAC lacks scientific substantiation for the advertising claims, rather than alleging specifically the reasons why the ads allegedly are false. This "lack of substantiation" theory is not actionable under California law and cannot support *any* of the claims Plaintiffs have alleged. Plaintiffs' attempted solution to this glaring legal defect – deleting the word "unsubstantiated" from the FAC – does not change the fundamental nature of their legal theory.

NAC pointed out these and other fatal defects in its first motion. Nothing has changed. Because Plaintiffs have not cured the fatal defects in their FAC, the Court should dismiss this case with prejudice.

## II. STATEMENT OF FACTS

### A. Plaintiffs' Allegations

Defendant NAC markets a dietary supplement called "Super Beta Prostate." (FAC ¶ 9.) Plaintiffs allege that NAC's advertising makes implied claims that Super Beta Prostate will treat and cure BPH. (FAC ¶¶ 1, 3, 26-32, 34, 39-43, 46, 48-51, 53, and 57.) According to Plaintiffs, Super Beta Prostate is "misbranded" as a dietary supplement, and is therefore being marketed illegally. (FAC ¶¶ 1-5, 33, 52-53, 55, 58, 72, 78, 103, 113, 118.) Plaintiffs purport to base these conclusions on allegations that Super Beta Prostate (1) is a "drug", not a dietary supplement [FAC ¶¶ 1, 5, 54, 56]; (2) is an unapproved "new drug" [FAC ¶¶ 5, 55]; and (3) is not "safe and effective" for the treatment of BPH [FAC ¶¶ 1, 43, 79, 82, 87, 92, 95, 99, 114]. These essential allegations are identical to those in the original complaint.

Plaintiffs contend that one of the celebrity endorsers of Super Beta Prostate, former NFL quarterback Joe Theismann, should be held personally liable. (FAC ¶¶ 10, 38-46, 66-122.)

In a sworn declaration attached to his original complaint, Plaintiff Luman stated that he "read the label for Super Beta Prostate" and purchased the Product in reliance on claims that it would treat BPH. (Luman Decl., ¶ 3 [Dkt. 1].) In a revised declaration, Luman now claims that prior to his purchase of Super Beta Prostate, he "reviewed the product's labeling" *and* "watched the advertisement with Joe Theismann" (although he doesn't say which ad) and purchased the product in reliance on the claims that it would treat BPH. (Revised Luman Decl., ¶ 3 [Dkt. 12].) Luman also now claims he "relied upon the claims of Dr. Jeffrey J. Zielinski." (*Id.*) Plaintiff Amkraut's declaration is identical to Luman's revised declaration, only the names have been changed. (Amkraut Decl., ¶ 3 [Dkt. 12].) Notably, neither Plaintiff alleges that the labels or advertising they reviewed explicitly mentioned BPH, and neither alleges that he saw the advertisement described in paragraphs 26-33 of the FAC. (FAC ¶¶ 38-53.)

The FAC asserts claims for: (1) violation of the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* ("MMWA"); (2) breach of express warranty; (3) breach of the implied warranty of merchantability; (4) breach of the implied warranty of fitness for a particular purpose; (5) unjust enrichment; (6) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"); (7) violation of California's Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200, *et seq.* ("UCL"); and (8) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"). Plaintiffs seek to represent a class of "all persons in the United States who purchased Super Beta Prostate, excluding those that made such purchase for the purpose of resale" and a subclass of California purchasers. (FAC ¶¶ 59-60.)

**B.    NAC's Advertising of Super Beta Prostate**

NAC markets Super Beta Prostate through television and radio commercials and on certain websites it maintains, including www.newvitality.com and www.betaprostate.com. (MacLean Decl., ¶ 3.) None of NAC's advertisements for Super Beta Prostate have ever referred to, or used the term "benign prostate hyperplasia." (*Id.* at ¶ 4.)

The advertisement referred to in Paragraphs 26-33 of the FAC was not prepared, disseminated or authorized by NAC. A third party ran this advertisement on its website – thesuperbetaprostate.org – through You Tube. (MacLean Decl., ¶ 8.) The ad ran from January 6,

2013 to March 6, 2013 – *after* Plaintiff Luman stooped making purchases, and was taken down from thesuperbetaprostate.org and You Tube at least a month *before* Plaintiff Amkraut ordered Super Beta Prostate on April 12, 2013. (MacLean Decl., ¶¶ 9-10; Barreca Decl., ¶ 5 and Ex. A thereto; Penn Decl., ¶ 8 and Ex. C thereto.)

## III.  ALL OF PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

### A.  The Complaint Should Be Dismissed Under Federal Rule of Civil Procedure 12(b)(1) Because Plaintiffs Lack Standing And Their Claims Are Moot.

A litigant invoking the jurisdiction of a federal court must have "standing" to do so, which requires that he "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (internal citation omitted).

In addition to the standing requirement, a court lacks subject matter jurisdiction to hear a claim that is moot. *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003). "Mootness can be characterized as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Id.* (internal citation omitted). "If there is no longer a possibility that [a plaintiff] can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction." *Id.* (internal citation omitted).

A federal court must dismiss an action upon determining that it lacks subject-matter jurisdiction. Fed. R. Civ. Pro. 12(h)(3). "[W]hen subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Kingman Reef Atoll Investments, L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008). In a motion to dismiss under Rule 12(b)(1), like this one, courts may consider evidence outside the complaint. *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1051 n. 2 (9th Cir. 2003).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

4

13-cv-00656— MEMO. OF P&A ISO NAC
MARKETING'S MOTION TO DISMISS FAC

**1. Plaintiffs' Monetary Claims Fail Because They Received a Refund of the Purchase Price (If Any) and Shipping Charges.**

Courts have consistently held that a claim is moot when a defendant satisfies the plaintiff's demand for relief. *See, e.g., Spencer–Lugo v. INS,* 548 F.2d 870, 870 (9th Cir. 1977) (per curiam) (where INS agreed to exactly what petitioners wanted, no case or controversy remained). California district courts have dismissed putative class actions when the named plaintiff received a refund or was otherwise offered the amount he would have received in damages and restitution. *See, e.g., Brandon v. National R.R. Passenger Corp. Amtrak,* 2013 WL 800265, *3-5 (C.D. Cal. March 1, 2013) (dismissing UCL class claims as moot when named plaintiff had received all unpaid meal and rest premiums and business expenses); *Tosh-Surryhne v. Abbott Laboratories Inc.,* 2011 WL 4500880, *5 (E.D. Cal. Sept. 27, 2011) (class action moot because defendant offered plaintiff full restitution prior to lawsuit); *Russell v. U.S.,* 2009 WL 4050938, *3-6 (N.D. Cal. Nov. 20, 2009) (dismissing class action as moot because plaintiff received refund of allegedly unlawful interest charges that served as a basis for the lawsuit).

Here, on approximately February 11, 2013, nearly two months before Luman filed his original complaint, NAC issued him a refund of the purchase price and shipping costs, which moots his individual claims and precludes him from representing the putative class. (Mayer Decl. at ¶ 6.) In an effort to demonstrate that Luman has standing, Plaintiffs now allege that Luman did not request a refund from NAC, and that any refund was "involuntary." (FAC ¶ 7.) But whether he requested, or voluntarily accepted, the refund is irrelevant to the Article III analysis. *See, e.g., Tosh-Surryhne,* 2011 WL 4500880 (finding plaintiff's claims moot even where she refused to accept defendant's offer of restitution).

Plaintiff Amkraut also lacks standing. Following three obscenity-filled phone calls, Amkraut ordered a *free sample* of Super Beta Prostate on April 12, 2013, *after* the original complaint was filed. (Penn Decl., ¶¶ 5-8; Exs. A-C thereto.) Amkraut was loaded for bear in each call, berating the NAC employees who had the misfortune to field his call and threatening to take unspecified action against the company. His complaints focused primarily on shipping and handling charges and concerns that he might be charged for multiple shipments; he complained

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

about these issues in each call, acting as if he had never heard the explanations provided on prior calls. (Exs. A-C to Penn Decl.) Amkraut received his trial order on April 23, less than a week before deciding to join this case (he signed his declaration on May 1), so it is difficult to understand how he could claim the product didn't work for him. (Mayer Decl., ¶ 9.) Based on these facts, Amkraut clearly was a plaintiff in search of a lawsuit, and Plaintiffs' counsel found a willing shill. Because he has not paid for a single bottle of Super Beta Prostate, Amkraut has not suffered any legal injury, so he too lacks standing. (*See* Mayer Decl., ¶¶ 8-11.)

That Plaintiffs also seek punitive damages and attorneys' fees does not save the FAC from dismissal. Under California law, where, as here, a plaintiff cannot recover compensatory damages, he is not entitled to punitive damages.[1] Similarly, a claim for attorneys' fees does not confer standing or "resuscitate an otherwise moot controversy."[2] Because Plaintiffs have no claim for monetary relief, the Court should dismiss the FAC with prejudice.

## 2. Plaintiffs Lack Standing to Seek Injunctive Relief

A plaintiff seeking an injunction must show that there is a "real and immediate threat" that he is "likely to suffer future injury" from the defendant's conduct. *City of Los Angeles v. Lyons,* 461 U.S. 95, 105 (1983). As the Ninth Circuit has explained, "system-wide injunctive relief is not available based on alleged injuries to unnamed members of a proposed class.... Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. de la Vina,* 199 F.3d 1037, 1045 (9th Cir. 1999).

Plaintiffs do not allege that they intend to purchase Super Beta Prostate in the future, and have already demonstrated that they are not satisfied with the product. Therefore, Plaintiffs lack

---

[1] *Sole Energy Co. v. Petrominerals Corp.*, 128 Cal. App. 4th 212, 238 (2005) ("An award of actual damages, even if nominal, is required to recover punitive damages.); *Kizer v. County of San Mateo,* 53 Cal.3d 139, 147 (1991) ("actual damages are an absolute predicate for an award of exemplary or punitive damages").

[2] *Cammermeyer v. Perry,* 97 F.3d 1235, 1238 (9th Cir.1996) (citing *Diamond v. Charles,* 476 U.S. 54, 70–71 (1985)); *see also Lewis v. Continental Bank Corp.,* 494 U.S. 472, 480 (1990) (noting that "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim").

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

6

13-cv-00656— MEMO. OF P&A ISO NAC
MARKETING'S MOTION TO DISMISS FAC

standing to seek injunctive relief.[3]  Because Plaintiffs lack standing to pursue injunctive relief and

their claims for monetary relief are moot, the Court should dismiss the FAC with prejudice.

### 3. Alternatively, Plaintiffs Lack Standing To Pursue False Advertising Claims for Advertising They Never Saw and Did Not Rely On.

Where a plaintiff fails to allege that he relied on the disputed advertising, he lacks Article

III standing to pursue claims based on that advertising.  *See, Sanders v. Apple Inc.*, 672 F. Supp.

2d 978, 984 (N.D. Cal. 2009) (finding that plaintiff lacked standing to sue for false advertising

when he didn't allege he relied on the challenged advertising when purchasing the product).  In

the FAC, Plaintiffs describe an advertisement that was published by a third party *after* Plaintiff

Luman stopped ordering the product.  (FAC ¶¶ 26-33; MacLean Decl., ¶ 10; Mayer Decl., ¶¶ 4-

6.)  Accordingly, the advertisement could not have impacted Luman's decision.

The third party advertisement was taken down on March 6, 2013, at least a month *before*

Plaintiff Amkraut ordered a free sample of Super Beta Prostate.  (MacLean Decl., ¶ 9; Barreca

Decl., ¶ 5 and Ex. A thereto; Penn Decl., ¶ 8 and Ex. C thereto.)  The advertisement never played

on any of NAC's websites, which is what Plaintiff Amkraut alleges he reviewed prior to ordering

the product.  (*See* Ex. C to Penn Decl. [referring to advertising on NAC's website]; MacLean

Decl., ¶ 8.)

Neither Plaintiff alleges that he relied on the third party advertisement referred to in

Paragraphs 26-33 in making their decision to purchase the Product.  Plaintiffs cannot base either

their individual claims or putative class claims on allegedly false advertisements that they

themselves did not see or rely on in making their decision to purchase Super Beta Prostate.

---

[3] *See McNair v. Synapse Group, Inc.*, 672 F.3d 213 (3d Cir. 2012) (plaintiffs who did not intend to buy product because of past misrepresentations do not have standing to seek injunctive relief, on their own behalf or on behalf of a class); *Campion v. Old Republic Home Protection Co.*, Inc. 861 F. Supp. 2d 1139, 1149-1150 (S.D. Cal. 2012) (where a plaintiff has knowledge of Defendants alleged misconduct, the "plaintiff cannot show he is realistically threatened by a repetition of the alleged violation"); *Laster v. T-Mobile USA, Inc.*, 2009 WL 4842801, *4 (S.D. Cal. Dec. 14, 2009) (a plaintiff's knowledge of defendant's misconduct "precludes them from showing likelihood of future injury"); *Cattie v. Wal-Mart Stores, Inc.,* 504 F. Supp. 2d 939, 951 (S.D. Cal. 2007) ("It is unclear how prospective relief will redress [plaintiff's] injury since she is now fully aware of [the alleged false advertising].")

*Sanders*, 672 F. Supp. 2d at 984 (dismissing putative class action claim on 12(b)(1) grounds where named plaintiff had not relied on challenged advertising"); *Johns v. Bayer Corp.,* 2010 WL 476688, *5 (S.D. Cal. Feb. 9, 2010) (class action plaintiff "cannot expand the scope of his claims to include" advertisement that he did not rely upon). For this additional reason, Plaintiffs lack standing to pursue the claims alleged in the FAC.[4]

**B. The FAC Should Be Dismissed Because the FDA Has Primary Jurisdiction to Resolve the Underlying Issues on All of Plaintiffs' Claims.**

Assuming the Court determines it has subject matter jurisdiction, the FAC should be dismissed or stayed under the primary jurisdiction doctrine. The doctrine is a "prudential" one, "under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Clark v. Time-Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (citations omitted).

Courts generally consider four factors when applying the primary jurisdiction doctrine: "(1) [a] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Clark*, 523 F.3d at 1115. Each of these factors weighs strongly in favor of the Court dismissing or staying this action and deferring to the FDA's expertise and authority.

**1. Congress Created a Comprehensive Regulatory Scheme to Govern Issues Relating to Dietary Supplements and Drugs and Assigned Enforcement Authority Exclusively to the FDA.**

Congress enacted the FDCA (21 U.S.C. §§ 301, *et seq.*) to govern the labeling and marketing of foods and drugs. In 1994, Congress enacted a series of amendments to the FDCA known as the Dietary Supplement Health and Education Act ("DSHEA") (Pub. L. No. 103-417, 108 Stat. 4325-35) (codified as amended in various sections of 21 U.S.C. and 42 U.S.C.), to

---

[4] Plaintiffs' continued failure to specify which ads they allegedly saw is contrary to the heightened pleadings requirements of Rule 9(b), which apply to their claims. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). NAC separately moves to dismiss on this independent ground.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

uniformly regulate the manufacture, labeling, advertising, and distribution of dietary supplements. In legislative findings in support of DSHEA, Congress specifically stated that "a rational Federal framework must be established to supersede the current ad hoc, patchwork regulatory policy on dietary supplements." DSHEA, § 2, ¶ 15(B), 108 Stat. at 4326; RJN, Ex. A at 3.

Neither the FDCA nor DSHEA provide for a private right of action. To the contrary, the FDCA expressly provides that enforcement authority is exclusively reserved to the federal government. *See, e.g.,* 21 U.S.C. § 337(a) ("all such proceedings for the enforcement, or to restrain violations, of this Act shall be by and in the name of the United States"); 21 U.S.C. §§ 337 and 342(f); 21 C.F.R. § 10.25 (FDA can commence administrative enforcement actions or judicial actions through the DOJ); 21 U.S.C. §§ 332-335b (FDA has statutory authority to seek, among other things, product seizures, injunctions, and civil and criminal penalties).[5]

The FDA's own regulations reiterate its primary jurisdiction:

> FDA has primary jurisdiction to make the initial determination on issues within its statutory mandate, and will request a court to dismiss, or to hold in abeyance its determination of or refer to the agency for administrative determination, any issue which has not previously been determined by the agency.

21 C.F.R. § 10.25(b).

As a matter of practice, the FDA will often serve "warning letters" on manufacturers, seeking explanation or correction of alleged violations under threat of enforcement action, including the issues at the heart of Plaintiffs' FAC, which include allegations that Super Beta Prostate is misbranded as a dietary supplement when it allegedly qualifies as a drug or new drug that the FDA has not approved [FAC ¶¶ 1, 5, 54-56].[6]

Congress intended the FDA, not the courts, to make the initial determination regarding

---

[5] The only exception to the exclusive enforcement rule is that in certain very limited circumstances a State may bring an action in its own name, within its own jurisdiction. 21 U.S.C. § 337(b). Although Congress did not authorize a private right of action under the FDCA or DSHEA, private parties may nevertheless avail themselves of the "citizen petition" process to compel action by the FDA. 21 C.F.R. § 10.30.

[6] *See e.g., Weinberger v. Bentex Pharmaceuticals, Inc.,* 412 U.S. 645 (1973) ("*Bentex*") (FDA sent a letter to drug manufacturer contending their product was a "new drug" under the FDCA); *Biotics Research Corp. v. Heckler,* 710 F.2d 1375 (9th Cir. 1983) (FDA sent a letter to dietary supplement manufacturer contending its products were "drugs" under the FDCA, not "foods").

issues under the FDCA and DSHEA. Consequently, the second and third primary jurisdiction factors – that there is a "statute that subjects an industry or activity to a comprehensive regulatory authority" [the FDCA and DSHEA] and that Congress gave jurisdiction over the administration of the statute to an administrative body having regulatory authority [the FDA] – strongly weigh in favor of dismissing or staying the FAC.

**2. The Issues Raised Within The FAC Fall Squarely Within the Regulatory Power of the FDA and Require the FDA's Expertise and Uniformity in Administration.**

Plaintiffs' claims rest on the allegations that the Product (1) is "misbranded" as a dietary supplement because it is actually a "drug," (2) constitutes a "new drug" under the FDCA, and (3) is not "safe and effective" for its intended uses. (FAC ¶¶ 1, 5, 43, 54-56, 58, 79, 82, 87, 92, 95, 99, 115.) The determination of each of these issues requires an interpretation of the FDCA and DSHEA and falls squarely within the FDA's jurisdiction and expertise.

**a. Whether a product is properly classified as a "food" or "drug" falls squarely within the FDA's primary jurisdiction.**

The FDCA differentiates between "foods" and "drugs," and applies different provisions depending on a product's classification. Under DSHEA, a "dietary supplement" is a "food" under the FDCA, except where it otherwise qualifies as a "drug." 21 U.S.C. § 321(ff). The FDCA prohibits the "misbranding" of any food or drug, or the manufacture or marketing of any food or drug that is "misbranded." 21 U.S.C. § 331(a), (b) and (g). A food is "misbranded" if its labeling is "false or misleading in any particular." 21 U.S.C. §§ 343(a), 321(n).

Plaintiffs allege that Super Beta Prostate is a drug, not a dietary supplement. According to Plaintiffs, because Super Beta Prostate is marketed as a dietary supplement, it is "misbranded" and therefore being sold illegally. (FAC ¶¶ 1, 5, 54, 56-58.) These analytical classifications are carefully regulated under the FDCA, DSHEA and related regulations.

When faced with the identical question of whether a product constituted a "food" or a "drug" under the FDCA, the Ninth Circuit determined that the FDA had primary jurisdiction to decide the issue, and affirmed the dismissal of the plaintiff's complaint. *Biotics,* 710 F.2d at 1376-1377; *see also, Dietary Supplemental Coalition v. Sullivan,* 978 F.2d 560, 563 (9th Cir.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

10

13-cv-00656— MEMO. OF P&A ISO NAC
MARKETING'S MOTION TO DISMISS FAC

1992), *quoting Biotics*. "Classification of a product as a drug, biological product, or food" involves "complex chemical and pharmacological considerations and determination of technical and scientific questions" that "are best left to agency expertise." *Biotics,* 710 F.2d at 1377. As the Ninth Circuit recognized, courts should decline to substitute their opinion for that of the FDA or "review anything less than a final administrative determination on the classification of a product as a drug, biological product, or food." *Id.* at 1377.

Plaintiffs' FAC asks the Court to tread where the Ninth Circuit said it shouldn't – assuming regulatory powers in the complex area of product classification that is within the FDA's regulatory authority. The Court should defer to the FDA and not attempt to wrestle with complex technical and scientific issues outside of its expertise. *Biotics,* 710 F.2d at 1377; *see also*, *Braintree Laboratories, Inc. v. Nephro-Tech, Inc.,* 1997 WL 94237, * 6, *8 (D. Kan. Feb. 26, 1977) (dismissing complaint on primary jurisdiction grounds, because plaintiff's claims required determining whether defendant's product was a "drug" rather than a "dietary supplement", and "[s]uch a claim would require direct interpretation and application of the FDCA" and therefore was "more appropriately addressed by the FDA, especially in light of Congress's intention to repose in that body the task of enforcing the FDCA").

### b.   The issue of whether a product is a "new drug" under the FDCA is within the primary jurisdiction of the FDA.

Plaintiffs also claim that Super Beta Prostate qualifies as a "new drug" under the FDCA, and is "misbranded" because FDA approval was not obtained. (FAC ¶¶ 5, 55-57.)

Determining whether a drug should be classified as a "new drug" under the FDCA falls within the FDA's primary jurisdiction. *Bentex,* 412 U.S. at 653-654 (affirming dismissal on primary jurisdiction grounds where central issue was whether product qualified as a "new drug" under the FDCA). In so holding, the Supreme Court reasoned that "[w]hether a particular drug is a 'new drug' depends in part on the expert knowledge and experience of scientists based on controlled clinical experimentation and backed by substantial support in scientific literature" and is the kind of issue "peculiarly suited" to initial determination by the FDA:

In cases raising issues of fact not within the conventional

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

11

13-cv-00656— MEMO. OF P&A ISO NAC
MARKETING'S MOTION TO DISMISS FAC

experience of judges or cases requiring the exercise of administrative discretion, *agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined.* Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

*Bentex,* 412 U.S. at 652-65 (emphasis added). *See also CIBA Corp. v. Weinberger,* 412 U.S. 640, 643-644 (1973) (affirming dismissal of plaintiff's complaint).

Here, because the determination of whether Super Beta Prostate is a "new drug" "is not a "matter well left to a court without chemical or medical background," the Court should dismiss or stay this action pending resolution of the underlying issues by the FDA. *Bentex,* 412 U.S. at 654; *accord IMS Ltd. v. Califano,* 453 F. Supp. 157, 160 (C.D. Cal. 1977) (granting defendant's motion to dismiss, holding that "Primary jurisdiction to determine whether plaintiff's product is a 'new drug' lies with the FDA").

        **c.**      **The FDA has primary jurisdiction over issues relating to "safety and efficacy" of products governed by the FDCA.**

Plaintiffs also allege that Super Beta Prostate is "dangerous[]" and is not "safe and effective" for the treatment of BPH.[7] (FAC ¶¶ 1, 43, 79, 82, 87, 92, 95, 99, 115.) To the extent that Plaintiffs' safety and efficacy claims are related to Plaintiffs' claims that the Product is a "drug" or "new drug", such a determination falls within the FDA's primary jurisdiction:

The determination whether a drug is generally recognized as safe and effective within the meaning of § 201(p)(1) [21 U.S.C. § 321(p)(1)] necessarily implicates complex chemical and pharmacological considerations. Threshold questions within the peculiar expertise of an administrative agency are appropriately

---

[7] Notably, none of the advertising quoted in the FAC specifically claims Super Beta Prostate is safe and effective for the treatment of BPH. (*See, e.g.,* FAC ¶¶ 3, 27-32, 34, 40-43, 46, 48-51, and 53.) Rather, Plaintiffs allege that the claims made in the advertising for the Product *imply* that that it is safe and effective for this purpose because one advertisement (published by a third party) mentions BPH and others claim that Super Beta Prostate can help symptoms of an "aging prostate," which Plaintiffs allege is a synonym for BPH. (FAC ¶¶ 34, 39, 42, 48-51, and 53.)

routed to the agency, while the court stays its hand.

*Bentex,* 412 U.S. at 654.

To the extent Plaintiffs' claim is that Super Beta Prostate is not a "safe and effective" dietary supplement (as opposed to drug), Plaintiffs' allegations still implicate the FDCA, which defines when a dietary supplement is "adulterated" (i.e. "unsafe"). 21 U.S.C. § 342(f)(1). The determination of whether a dietary supplement is adulterated is an enforcement matter entrusted solely to the FDA and the Department of Justice. 21 U.S.C. §§ 342(f)(1)(D), 342(f)(2), and 337(a). Indeed, courts have recognized that "Congress imposed a duty on the FDA to keep adulterated dietary supplements off the market." *Neutraceutical Corp. v. Von Eschenbach,* 459 F.3d 1033, 1038 (10th Cir. 2006).

To determine whether the Product is "unsafe" or "dangerous" – and therefore "adulterated" under DSHEA – this Court would need to venture into complex and technical issues, including analyzing the risks and safety of Super Beta Prostate and its active ingredient, beta-sitosterol. *See Neutraceutical,* 459 F.3d at 1039-1041. Specifically, the Court would need to determine whether a product with beta-sitosterol presented a "significant or unreasonable risk of injury or illness" under recommended dosage and usage. *See* 21 U.S.C. § 342(f)(1)(A).

No issue relating to dietary supplements presents a more clear need for agency expertise and regulatory consistency than the issue of "adulteration" and the determination of whether a supplement presents an "unreasonable risk" to the public. An example is FDA's ban on ephedrine alkaloids, which resulted after "over seven years of agency review, public notice and comment, peer-reviewed literature, and scientific data." *See Neutraceutical,* 459 F.3d at 1040-1041. As the Tenth Circuit noted, "[t]he review of scientific literature is properly the province of the FDA." *Id.* at 1042.

In a case similar to this one involving UCL and FAL claims alleging that a dietary supplement was wrongly promoted as "safe and healthy", the district court held that the issues raised were properly determined by the FDA. *Aaronson v. Vital Pharmaceuticals, Inc.*, 2010 WL 625337 at *1-2 (S.D. Cal., Feb. 17, 2010). Relying on the FDA's primary jurisdiction, the court granted defendant's motion to dismiss, noting it would likely need to evaluate conflicting clinical

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

13

13-cv-00656— MEMO. OF P&A ISO NAC
MARKETING'S MOTION TO DISMISS FAC

studies and determine whether the product and its ingredients should be deemed to be safe. *Id.* at *2. The Court, citing DSHEA, reasoned that "the FDA has both the expertise and the authority to determine whether [the product] is safe, and the Court believes the FDA is in the better position to make that determination." *Id. See also Healthpoint Ltd. v. Stratus Pharmaceuticals, Inc.*, 273 F. Supp. 2d 769, 788 (W.D. Tex. 2001) ("whether Kovia is dangerous or unsafe [is an] enforcement issue . . . committed to the FDA and better suited for resolution by the FDA").

Thus, all four primary jurisdiction factors weigh strongly in favor of dismissal. Plaintiffs seek to use this Court to regulate in an area that falls squarely within the FDA's jurisdiction and expertise. The Court should defer to the FDA's jurisdiction and dismiss or stay the case.

## C. Plaintiffs' "Lack of Substantiation" Theory Does Not State a Viable Claim Under California Law.

Plaintiffs base their case on the theory that there is *no substantiation* for NAC's advertising of Super Beta Prostate. Plaintiffs do not allege any *facts* demonstrating that Super Beta Prostate does not produce any of the advertised effects.

California law is clear that false advertising claims by private parties based on the theory that there is no scientific basis for the advertised efficacy of a product cannot stand. *Nat. Counsel Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.,* 107 Cal. App. 4th 1336, 1344 (2003) (affirming judgment for defendant homeopathic remedy manufacturer in action where plaintiff claimed defendant's products were "drugs," that there was no scientific evidence supporting defendant's efficacy claims, and that defendant's products were not effective). Rather, "a plaintiff in a false advertising or unlawful competition action has the burden of producing evidence that the challenged advertising claim is false or misleading." *Id. See also Arizona Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Intrn., Inc.*, 421 F.3d 981, 985 (9th Cir. 2005) (under California law, "the plaintiff has the burden of proving that the challenged advertising is false or misleading to a reasonable consumer.").

In recent decisions involving dietary supplements, California district courts have dismissed UCL, FAL, CLRA, and breach of warranty claims based on the alleged lack of substantiation for the defendant's advertising. *See Fraker v. Bayer Corp.*, 2009 WL 5865687

(E.D. Cal. Oct. 6, 2009), *8-9 (dismissing UCL, CLRA, and express warranty claims); *Chavez v. Nestle USA, Inc.*, 2011 WL 2150128, at *5-6 (C.D. Cal. May 19, 2011) (dismissing UCL and related FAL claims); *Barrera v. Pharmavite, LLC*, No. CV 2:11-04153 (C.D. Cal. Sept. 19, 2011) (unpublished minute order) (dismissing UCL and CLRA claims) (Ex. B to RJN); *Stanley v. Bayer Healthcare LLC,* 2012 WL 1132920 at *8-10 (S.D. Cal. Apr. 3, 2012) (summary judgment granted as to UCL, CLRA, breach of express warranty and unjust enrichment claims).

In *Fraker*, the plaintiff alleged, as here, that the defendant had "'no reasonable basis, consisting of competent and reliable scientific evidence to substantiate'" the health-benefit claims regarding a vitamin. *Fraker*, 2009 WL 5865687, at *4 (quoting the complaint). In that case, the FTC had brought an enforcement action that resulted in a consent decree prohibiting the manufacturer from making certain claims. *See id.* The court explained that, although administrative agencies like the FTC may have the authority to require substantiation for advertising claims, California law provides "no private remedy for unsubstantiated advertising." *Id.* at *8 (citing and discussing *King Bio*). The court found "no authority for the proposition that the absence of substantiation of an advertising claim is, itself, falsity or somehow misleading." *Id.* The court thus dismissed the UCL, FAL and CLRA claims. *Id.* at *9.

Similarly, in *Chavez*, the plaintiff alleged that the defendant had misrepresented the health benefits of its Juicy Juice products because it did "not possess requisite scientific evidence", but failed to allege facts to show the claims were false. *Id.* at *1,*5. Relying on *Fraker,* the court dismissed the complaint, holding "'[l]ack of substantiation' is not a cognizable theory" under the UCL or FAL. *Id.* at *5.

In *Barrera*, the complaint similarly challenged representations that glucosamine supplement TripleFlex "will improve joint 'comfort, mobility and flexibility'" through nutrients "needed for daily maintenance and renewal of your joints.'" *Barrera*, Minute Order at 1-2 (Ex. B to RJN) (quoting complaint). Relying on *Fraker* and *Chavez*, the court granted the motion to dismiss. *Id.* at 3-5. It held that, notwithstanding "conclusor[y]" allegations that the label representations were "false and misleading" and "factually baseless," plaintiff was in fact alleging a "lack of substantiation" theory that failed as a matter of law. *Id.*

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

15

13-cv-00656— MEMO. OF P&A ISO NAC
MARKETING'S MOTION TO DISMISS FAC

1   Most recently, in *Stanley*, the plaintiff brought a putative class action challenging health

2   claims made regarding a dietary supplement containing probiotics.  The court granted summary

3   judgment as to claims under the UCL, CLRA and for breach of express warranty because an

4   "alleged lack of substantiation does not render claims false and misleading under the UCL or

5   CLRA."  2012 WL 1132920, *4.

6   As in these cases, Plaintiffs allege that the advertising claims for Super Beta Prostate are

7   not supported by competent scientific evidence.  For example, because they claim Super Beta

8   Prostate is actually a "new drug" under the FDCA, Plaintiffs necessarily must allege that it is "not

9   generally recognized among experts . . . as safe and effective for use . . . ."  (FAC ¶ 5.)  Plaintiffs

10  further allege that claims allegedly suggesting that Super Beta Prostate treats symptoms of BPH

11  "have not been authorized by the FDA or any scientific body."  (FAC ¶¶ 56-57.)  Plaintiffs also

12  allege that Super Beta Prostate was "unfit for [its] intended and ordinary purpose because there is

13  no competent and reliable scientific evidence that Super Beta Prostate is a safe and effective

14  treatment for the symptoms of BPH."  (FAC ¶ 83.)  These are clear allegations that NAC's

15  advertising is false because of an alleged lack of substantiation.

16  In an attempt to plead their way around this glaring defect, Plaintiffs have omitted the

17  word "unsubstantiated" from two paragraphs in their FAC.  (*Compare* FAC ¶¶ 61-62 with

18  Complaint [Dkt. 1] ¶¶ 60-61.)  The strategic omission of the word "unsubstantiated" does not

19  change the fact that Plaintiffs' allegations that Super Beta Prostate is a "new drug" and is not safe

20  and effective necessarily rest on the alleged lack of substantiation theory.  *See Bauer v. Tacey*

21  *Goss, P.S.*, 2012 WL 2838834, *3 (N.D. Cal. July 10, 2012) (saying a plaintiff cannot avoid the

22  implications of earlier factual allegations "by omitting them" from a subsequent complaint).

23  Thus, the sole underlying basis for Plaintiffs' claim that the advertising for Super Beta

24  Prostate is false is the supposed lack of scientific substantiation for the advertising claims.

25  Plaintiffs' lack of substantiation theory is not actionable under California law.  As in *Fraker,*

26  *Chavez*, *Barrera* and *Stanley*, the Court should dismiss the FAC in its entirety with prejudice.

27  **D.**     **Each of Plaintiffs' Individual Claims Fails as a Matter of Law.**

28  "A motion to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) is granted

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

16

13-cv-00656— MEMO. OF P&A ISO NAC
MARKETING'S MOTION TO DISMISS FAC

when the plaintiff fails to state a claim upon which relief can be granted," including "where there is either a lack of cognizable legal theory or the plaintiff fails to allege sufficient facts to support a cognizable legal theory." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). A plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations omitted). Rather, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 1. The Magnuson-Moss Warranty Act Does Not Apply.

Plaintiffs' MMWA claim fails because the MMWA is "inapplicable to any written warranty the making or content of which is otherwise governed by Federal law." 15 U.S.C. § 2311(d); *Bates v. General Nutrition Centers, Inc.,* --- F. Supp. 2d ---, 2012 WL 4857550, * 1 (C.D. Cal. Oct. 12, 2012) (dismissing MMWA claim because FDCA governs labeling of dietary supplements); *Hairston v. South Beach Beverage Co.*, 2012 WL 1893818, *5 (C.D. Cal., May 18, 2012) (dismissing MMWA claim because FDCA and FDA regulations govern labeling of beverages); *Kanter v. Warner-Lambert Co.,* 99 Cal. App. 4th 780, 797 (2002) (MMWA did not apply because "the FDCA and its implementing regulations govern the labeling at issue").

As discussed above, the FDCA governs the classification of products as drugs, new drugs, and dietary supplements, as well as the labeling of dietary supplements. Therefore, the MMWA simply does not apply, and Plaintiffs' MMWA claim should be dismissed with prejudice.

### 2. Plaintiffs' Breach of Express Warranty Claim Fails Because Plaintiff Does Not Allege the Exact Terms of the Alleged Warranty.

"In order to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986); *see also, Stanley v. Bayer Healthcare LLC,* 2012 WL 1132920, *10 (S.D. Cal. Apr. 3, 2012) (quoting same). Here, Plaintiffs do not allege the "exact terms of the

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

17

13-cv-00656— MEMO. OF P&A ISO NAC
MARKETING'S MOTION TO DISMISS FAC

warranty" on which they relied. Plaintiffs' failure to identify the alleged "affirmation of fact or promise" or "description of the goods" on which they relied and that became "part of the basis of the bargain" is fatal to their claim. *Williams,* 185 Cal. App. 3d at 142; *See also, Stanley,* 2012 WL 1132920 at *10 (summary judgment on express warranty claim where plaintiff "failed to identify any 'express warranty' made by Defendant).

Plaintiffs cannot argue that the alleged warranty was that the Product would treat BPH. NAC specifically disclaimed any such warranty on the label (on which both Plaintiffs allegedly relied): "This product is not intended to diagnose, treat, cure or prevent any disease." (FAC ¶ 53.) The express warranty claim should be dismissed with prejudice.

### 3. Plaintiffs' Breach of Implied Warranty Claims Fail Because Plaintiffs Do Not Allege Sufficient Facts To State a Claim.

Plaintiffs fail to state a claim under either of their implied warranty theories: (1) fitness for the ordinary purpose [warranty of merchantability], Cal. Comm. Code § 2314 (count three), and (2) fitness for a particular purchase, Cal. Comm. Code § 2315 (count four).

**Fitness for the ordinary purpose.** The implied warranty of merchantability arises by operation of law and "does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295-96 (1995) (internal quotation marks omitted). Plaintiffs base the alleged breach of warranty on an alleged lack of substantiation theory. (FAC ¶ 83.) Plaintiffs' implied warranty claim necessarily fails because, as stated above, there is no remedy for private plaintiffs based upon claims of alleged "lack of substantiation." *Fraker,* 2009 WL 5865687 at *8-9 (dismissing implied warranty claim based on alleged lack of substantiation); *Stanley,* 2012 WL 1132920 at *8-10; *Chavez,* 2011 WL 2150128 at *5-6.

**Fitness for a particular purpose.** Plaintiffs' claim for breach of the implied warranty of fitness for a particular purpose is duplicative of Plaintiffs' claim for breach of the implied warranty of merchantability. A "'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the

concept of merchantability and go to uses which are customarily made of the goods in question."

*Am. Suzuki,* 37 Cal. App. 4th at 1295 n. 2.

Plaintiffs allege that Defendants advertised Super Beta Prostate as being effective to treat BPH. (FAC ¶¶ 1, 26, 33-34, 39, 48-51, 53 and 92.) If treatment of BPH was the product's advertised "ordinary use", then Plaintiffs are not alleging any use peculiar to them. *See Harlan v. Roadtrek Motorhomes, Inc.*, 2009 WL 928309, *9 (S.D. Cal. Apr. 2, 2009) (plaintiffs' breach of implied warranty of fitness for a particular purpose claim failed when plaintiffs did not allege an intended use other than the ordinary use for which the vehicle was advertised). Because Plaintiffs have failed to allege a "particular purpose" for which they intended to use the Product different from the purposes for which it allegedly was advertised, their implied warranty claim fails and should be dismissed with prejudice. *See Am. Suzuki,* 37 Cal. App. 4th at 1295 n. 2.

### 4. Plaintiffs' Fifth Count for Unjust Enrichment Fails Because "Unjust Enrichment" Is Not a Cognizable Cause of Action in California

There is no cognizable claim for unjust enrichment in California. *Bosinger v. Belden CDT, Inc.*, 358 F. App'x 812, 815 (9th Cir. 2009) ("In California there is no cause of action for unjust enrichment; it is a "general principle, underlying various legal doctrines and remedies, rather than a remedy itself.") Because Plaintiffs seek restitution through their UCL claim, their unjust enrichment claim is superfluous. *Walker v. GEICO Gen. Ins. Co.*, 2007 WL 499660, *4-5 (E.D. Cal. Feb. 12, 2007) *aff'd*, 558 F.3d 1025 (9th Cir. 2009) ( "California law does not recognize Plaintiff's claim for unjust enrichment*"); Randhawa v. Skylux Inc.*, 2012 WL 5349403, *2 (E.D. Cal. Oct. 26, 2012) ( "there is no cause of action in California for unjust enrichment." Accordingly, Plaintiffs' unjust enrichment claim should be dismissed with prejudice.

### 5. Plaintiffs' CLRA, UCL, and FAL Claims Fail Because Plaintiffs Have Failed to Sufficiently Allege That They Suffered Injury As a Result of Defendants' Advertising and Their Lack of Substantiation Theory is Not Actionable Under California Law.

In order to state a claim under the CLRA, UCL, and FAL, Plaintiffs must have suffered an actual injury. Cal. Bus. & Prof Code §§ 17204, 17535 (to have standing under the UCL or FAL a plaintiff must have suffered "injury in fact and [have] lost money or property" as a result of the

defendant's conduct); *Bower v. AT & T Mobility, LLC*, 196 Cal. App. 4th 1545, 1556 (2011) ("Relief under the CLRA is specifically limited to those who suffer damage" as a result of defendant's conduct).

As discussed above, Plaintiffs have not suffered any damage or lost any money or property because Luman received a full refund and Amkraut never paid for the Product.  In addition, Plaintiffs cannot base UCL, FAL or CLRA claims on ads they never saw, because reliance is an essential element of these claims.  *See Stearns v. Ticketmaster, Inc.*, 655 F.3d 1013, 1021-1024 (9th Cir. 2011.)  Finally, Plaintiffs' lack of substantiation theory does not state a cognizable claim under the UCL, FAL or CLRA.  *See King Bio,* 107 Cal. App. 4th at 1344.

## IV.  <u>CONCLUSION</u>

Plaintiffs' case fails on the most fundamental levels.  NAC raised the same arguments in its first motion to dismiss, but Plaintiffs have not made any substantive changes to their allegations or legal theories.  They obviously have nothing to add, and their allegations do not add up to any viable claim against NAC.  Their putative class action allegations do not excuse them from alleging specific facts to support their individual claims.  The Court should dismiss this case in its entirety with prejudice.

Dated:    May 28, 2013                    MANATT, PHELPS & PHILLIPS, LLP


                                    By:  /s/ Brad W. Seiling
                                          Brad W. Seiling
                                          *Attorneys for Defendant*
                                          NAC MARKETING COMPANY, LLC

201417055

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20            13-cv-00656— MEMO. OF P&A ISO NAC
            MARKETING'S MOTION TO DISMISS FAC