1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT COURT OF CALIFORNIA

10

11   FLOYD LUMAN; JOEL
12   AMKRAUT,

13              Plaintiffs,              No. 2:13-cv-00656-KJM-AC

14        vs.

15   JOE THEISMANN; NAC
16   MARKETING CO., LLC,

17              Defendants.              ORDER
18   _____/

19            This matter is before the court on defendants' motions to dismiss plaintiffs'

20   claims for breach of warranties and false advertising.  (ECFs 16, 20.)  On August 2, 2013, the

21   court held a hearing on this matter, at which L. Timothy Fisher and Annick Persinger appeared

22   for plaintiffs; Brad Seiling appeared for defendant NAC Marketing Co.; and Michael Spillner,

23   Emmanuel Fua, and Michael Weed appeared for defendant Joe Theismann.  For the reasons

24   below, the court GRANTS defendants' motions.

25   I.       FACTS AND PROCEDURAL BACKGROUND

26            Plaintiffs are purchasers of Super Beta Prostate ("SBP"), a drug that defendant

27   NAC Marketing Co. ("NAC") manufactures and markets as a treatment for the symptoms of

28

1

benign prostate hyperplasia ("BPH").  (First Amended Complaint ¶ 1, ECF 12 ("FAC").)

Defendant Theismann is the principal endorser of SBP; he appears in online, radio and

television advertisements, where he describes his own struggles with the symptoms of BPH.

(*Id.* ¶ 10.)  BPH is a progressive disease caused by an enlarged prostate, which can cause

bothersome urinary symptoms such as difficulty in urination, inability to completely empty the

bladder during urination, the need to urinate frequently, increased risk of urinary tract

infections, and painful urination.  (*Id.* ¶¶ 18, 21.)  Plaintiffs bring this action for breach of

warranties and false advertising because, they allege, SBP does not safely and effectively treat

the symptoms of BPH as advertised.  (*Id.* ¶ 43.)

Both plaintiffs, who seek to represent a putative class of purchasers of SBP, are

citizens of California.  (*Id.* ¶¶ 7–8.)  Plaintiff Luman first purchased SBP "for personal

consumer use" in late 2012.  (*Id.* ¶ 7.)  In deciding to purchase SBP, Luman relied upon the

advertisements featuring defendant Theismann and a person identified as Dr. Zielinski, M.D.,

both of whom endorsed the product.  (*Id.*)  Dr. Zielinski no longer practices medicine and

appeared in these advertisements as an actor; Zielinski now claims, in his expert opinion as a

lapsed doctor, that he would not recommend SBP for the treatment of BPH.  (*Id.* ¶ 2.)  Plaintiff

Amkraut first purchased SBP "for personal consumer use" in early 2013.  (*Id.* ¶ 8.)  He too

relied upon the advertisements featuring defendant Theismann and Dr. Zielinski.  (*Id.*)  Neither

plaintiff would have purchased SBP if they had "known the true facts concerning its safety,

efficacy, and failure to comply with FDA regulations."  (*Id.* ¶¶ 7–8.)

Plaintiffs claim that SBP is unsafe and ineffective in treating BPH on three

bases: (1) a 1995 study published in the medical journal *The Lancet* ("*Lancet* Study"), which

plaintiffs contend demonstrates "β-sitosterol" substances like SBP are ineffective in treating

BPH; (2) the opinion of Dr. Zielinski, the former doctor turned actor who appears in SBP

advertisements viewed by plaintiffs; and (3) the fact that the creator of SBP is a convicted felon

without training in any relevant field.  (*Id.* ¶ 1.)

Plaintiffs sent defendant NAC pre-suit letters in accordance with California's

Consumer Legal Remedies Act ("CLRA").  (*Id.* ¶¶ 106–107.)  In these letters, plaintiffs advised

defendants they were violating the CLRA and "must correct, repair, replace or otherwise rectify the goods alleged to be in violation" of the CLRA.  (*Id.*)  Defendants have filed declarations, which the court considers only for purposes of defendants' motion to dismiss for lack of subject matter jurisdiction; according to the declarations, both plaintiffs received complete refunds.

On February 11, 2013, well before the April 4, 2013 date on which plaintiff Luman filed his original complaint (ECF 1), defendant NAC issued Luman a refund for all of his SBP orders, including the purchase price and shipping costs.  (Mayer Decl. ¶ 7, ECF 16-4.)  Plaintiff Amkraut ordered his only bottle of SBP, a free sample, on April 12, 2013, which was delivered on April 23, 2013.  (Mayer Decl. ¶ 9.)  On May 10, 2013, the day plaintiff Luman filed his First Amended Complaint and added plaintiff Amkraut to this action, Amkraut also sent a pre-suit letter; he received a refund on May 13, 2013.  (Mayer Decl. ¶ 11.)  The record suggests plaintiffs used credit cards to purchase SBP, and it appears NAC remitted the refunds to plaintiffs' credit cards.  (*See* FAC ¶ 7 ("Any refund to Mr. Luman's credit card was unrequested and involuntary.").)

On May 28, 2013, defendant NAC filed its motion to dismiss under Rule 12(b)(1) and 12(b)(6).  (ECF 16.)  On the same day, defendant Theismann filed his motion to dismiss under Rule 12(b)(6), in which he also joined NAC's motion to dismiss.  (ECF 20.)  Plaintiffs opposed both motions on June 14, 2013 (ECFs 23, 24) and defendants replied on June 21, 2013 (ECFs 25, 26).  Plaintiffs' motion to appoint class counsel, filed on April 26, 2013, also is pending, and it is addressed below.  (ECF 8.)

In their First Amended Complaint, plaintiffs assert claims for: (1) violation of the federal Magnuson Moss Warranty Act; (2) breach of express warranty; (3) breach of the implied warranty of merchantability; (4) breach of the implied warranty of fitness for a particular purpose; (5) unjust enrichment; (6) violation of the CLRA; (7) violation of the California Unfair Competition Law ("UCL"); and (8) violation of the California False Advertising Law ("FAL").  (FAC ¶ 6.)

/////

/////

3

II.     STANDARD

        Federal courts are courts of limited jurisdiction and, until proven otherwise, cases lie outside the jurisdiction of the court.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377–78 (1994).  Lack of subject matter jurisdiction may be challenged by either party or raised *sua sponte* by the court.  FED. R. CIV. P. 12(b)(1); FED. R. CIV. P. 12(h)(3); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583–84 (1999).  A Rule 12(b)(1) jurisdictional attack may be either facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  In a facial attack, the complaint is challenged as failing to establish federal jurisdiction, even assuming all the allegations are true and construing the complaint in the light most favorable to plaintiff.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

        By contrast, in a factual attack, the challenger provides evidence that an alleged fact is false, or a necessary jurisdictional fact is absent, resulting in a lack of subject matter jurisdiction.  *Id.*  In these circumstances, the allegations are not presumed to be true and "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 n. 2 (9th Cir. 2003).

        Jurisdictional dismissal is "exceptional" and warranted only "'where the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous.'"  *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946).  The Ninth Circuit has held that "[j]urisdictional finding of genuinely disputed facts is inappropriate when 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action.'"  *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139

4

(9th Cir. 1983) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). "Normally, the question of jurisdiction and the merits of an action will be considered intertwined where . . . a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." *Id.* (quotation omitted).

III.    ANALYSIS

Plaintiffs assert this court has subject-matter jurisdiction under 28 U.S.C. § 1331[1] and § 1332(d)(2)(A)[2].  (FAC ¶¶ 12–13.)

Defendant NAC's argument, in which defendant Luman joins, is that the court lacks subject matter jurisdiction in part because plaintiffs do not have standing to pursue either monetary or injunctive relief.  (ECF 16-1 at 4–6.)  The court agrees, as explained below.  As this conclusion provides sufficient grounds to dismiss the entire action, the court does not reach the balance of defendants' arguments.

A.    Monetary and Punitive Relief

Defendant NAC argues plaintiffs lack standing to seek monetary relief because their injuries have already been redressed.  (ECF 16-1 at 4.)  Both plaintiffs received refunds: Luman before he filed his complaint, and Amkraut shortly after joining in the First Amended Complaint.  (*Id.*)  Because plaintiffs have been made whole, defendant NAC contends this action is moot.

Plaintiffs assert defendants may not simply "pick off" representatives of a putative class to foil a class action.  (ECF 24 at 3–4 (citing *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011)).)  In such situations, plaintiffs reason, courts consider the named plaintiff's position as relating back to the time the original class action complaint was filed.  (*Id.* at 4.)

---

[1] This section provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[2] This subsection grants district courts original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 and in which minimal diversity among the parties exists.

1    The elements of constitutional standing are injury in fact, causation, and

2    redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  The injury must

3    be (1) concrete and particularized and (2) "actual or imminent, not conjectural or hypothetical."

4    *Id.* at 560 (citations and quotations marks omitted).  Claims are moot "when the issues

5    presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."

6    *Powell v. McCormack*, 395 U.S. 486, 496 (1969).  Stated another way, a case is moot when

7    "interim relief or events have completely and irrevocably eradicated the effects of the alleged

8    violation" at issue.  *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979).  The Ninth Circuit

9    has found that one of the principal means by which a claim becomes moot is when "an

10   opposing party has agreed to everything the other party has demanded."  *GCB Commc'ns, Inc.*

11   *v. U.S. S. Commc'ns, Inc.*, 650 F.3d 1257, 1267 (9th Cir. 2011) (citing *Spencer–Lugo v. INS*,

12   548 F.2d 870, 870 (9th Cir. 1977)).  In addition, "[w]hen a defendant offers to make plaintiffs

13   whole, '[t]hat tender end[s] any dispute over restitution . . . .'"  *Vavak v. Abbott Labs., Inc.*,

14   No. SACV 10–1995 JVS (RZx), 2011 WL 10550065, at *5 (C.D. Cal. June 17, 2011) (citing

15   *Gates v. City of Chicago*, 623 F.3d 389, 413 (7th Cir. 2010)).  "In other words, if a plaintiff

16   seeks only restitution, which had been offered [] before the claim was brought, there can be no

17   claim; rather, any claim brought at that point is an unnecessary call upon this court's resources."

18   *Tosh-Surryhne v. Abbott Labs. Inc.*, No. CIV S-10-2603 KJM, 2011 WL 4500880, at *3 (E.D.

19   Cal. Sept. 27, 2011).

20       In *Pitts*, the case upon which plaintiffs principally rely, the Ninth Circuit held

21   that an offer of judgment under Federal Rule of Civil Procedure 68 does not moot a putative

22   class action even when that offer of judgment was made prior to class certification. 653 F.3d at

23   1091.  In *Pitts*, the plaintiff's complaint alleged the defendant failed to pay overtime and

24   minimum wages to the plaintiff and other similarly situated employees.  *Id.* at 1084.  Before

25   class certification, the defendant made an offer of judgment for $600; although the plaintiff

26   claimed only $88 in damages for himself, he refused the offer.  *Id.* at 1085.  The court took as a

27   given that this offer of judgment, even when refused, mooted the plaintiff's individual claim.

28   /////

6

1   *Id.* at 1091.[3]  Mootness notwithstanding, the court held that class certification could relate back

2   to the filing of the complaint because plaintiff's claim was transitory by virtue of the

3   defendant's litigation strategy, which sought to "buy off" individual claims.  *Id.*

4              As a threshold matter, the court finds here that plaintiffs' individual claims for

5   monetary relief are moot.  In the Ninth Circuit, a matter becomes moot when the opposing

6   party has agreed to everything the other party has demanded.  *GCB Comm'ns, Inc. v. U.S.*

7   *South Comm'ns, Inc.*, 650 F.3d 1257, 1267 (9th Cir. 2011) (citing *Rand v. Monsanto Co.*, 926

8   F.2d 596, 597–98 (7th Cir. 1991) (case mooted when defendant agreed to pay the full amount

9   plaintiff demanded)).  Here, plaintiff Luman was made whole before he filed the original

10  complaint.  He received his refund[4] on February 11, 2013, nearly two months before he filed

11  the original complaint in this action on April 4, 2013.  Therefore, at the time he filed his

12  complaint, he had already received monetary relief for the only compensatory damages

13  allegedly suffered: injuries "caused by Defendants' misrepresentations because [plaintiffs]

14  would not have purchased Super Beta Prostate if the true facts had been known."  (*See, e.g.*,

15  FAC ¶ 105.)  Luman does not allege or seek redress for any other injuries as a result of taking

16  SBP, such as a worsening in his prostate condition or other physical harm for which he has not

17  been compensated.  Luman's individual claim is moot.

18             Plaintiff Amkraut's claim is also moot.  Amkraut also received a refund, but

19  only after he joined in the first amended complaint.  Again, the original complaint was filed on

20  April 4, 2013.  Amkraut ordered his only bottle of SBP, a free sample for which he paid

21  shipping and handling, on April 12, 2013; he received it on April 23, 2013.  (Mayer Decl. ¶ 9.)

22  Amkraut joined this action on May 10, 2013, when Luman and he filed the First Amended

---

24  [3] The Ninth Circuit recently held that unaccepted Rule 68 offers that would fully satisfy
25  a plaintiff's claims do not moot those claims.  *Diaz v. First Am. Home Buyers Prot. Co.*, No.
    11-57239 (9th Cir. Oct. 4, 2013).

26  [4] The parties dispute whether plaintiffs requested these refunds or defendant NAC
27  unilaterally remitted them.  The voluntariness of the refunds is only relevant when, as discussed
    below, the court considers whether plaintiff's claims are transitory and therefore, despite their
28  mootness, may relate back.  *See Pitts*, 653 at 1091 (adopting this sequence of operations).

Complaint. The same day the First Amended Complaint was filed, Amkraut sent his pre-suit CLRA letter (FAC ¶ 107); he received his refund for shipping and handling costs on May 13, 2013 (Mayer Decl. ¶ 11). This refund renders moot Amkraut's individual demand for monetary relief; like Luman, he received complete restitution for his alleged compensatory damages. This does not end the court's analysis, however.

The court's next inquiry is whether plaintiffs' claims, despite their mootness, are transitory, permitting this class action to continue because class certification could relate back to the date of original filing of the complaint. Plaintiff Luman's claims may not relate back. A plaintiff's interest in a class action at best relates back to the filing of the complaint. *Pitts*, 653 F.3d at 1091. Luman's claims were moot when he received his refund, which occurred before he filed his original complaint. There is no basis for relating back to the time, more than two months before he filed his original complaint, when Luman received his refund.

Plaintiff Amkraut's monetary claims, on the particular facts of this case, are not transitory. Transitory claims are those that are "capable of repetition, yet evading review." 653 F.3d at 1090. The *Pitts* court noted two ways in which a claim can be transitory. First, claims are "inherently" transitory if they are time sensitive or there is a "constantly changing putative class." *Id.* at 1091. Second, they are transitory if a defendant employs a tactic of "buying off" the separate, small individual claims of a named class through Rule 68 offers of judgment. *Id.* While a defendant's tactics of the second type do not render a claim "inherently" transitory, the tactics achieve an identical result: "a claim transitory by its very nature and one transitory by virtue of the defendant's litigation strategy share the reality that both claims would evade review." *Id.* (citing *Weiss v. Regal Collections*, 385 F.3d 337, 347 (3d Cir. 2004)).[5] Because the plaintiff's claims in *Pitts* were rendered transitory as a result of

---

[5] As at least one other court has noted, the Supreme Court's decision in *Genesis Healthcare Corp. v. Symczyk*, __ U.S. __, 133 S. Ct. 1523 (2013), implicitly rejected the *Pitts* court's conclusion that the second category of transitory claims may relate back. *Chen v. Allstate Ins. Co.*, No. C 13-0685 PJH, 2013 WL 2558012, at *9 (N.D. Cal. June 10, 2013). However, as the court in *Chen* noted, *Genesis Healthcare*'s holding was limited to FLSA claims and did not overrule *Pitts*, which "remains good law as far as the court can ascertain." *Id.*

defendant's strategic actions, the *Pitts* court found that class certification could relate back to the filing of the operative complaint. *Id.* at 1092.

Here, Amkraut's monetary claims for restitution, like the plaintiff's in *Pitts*, are not inherently transitory: they do not involve claims that will expire before the court can rule on class certification. 653 F.3d at 1091. As set forth in the operative complaint, Amkraut simply seeks restitution for the money he expended on shipping and handling for his free sample of SBP.

Moreover, on the record before the court, the court cannot conclude that defendants' litigation strategy has been to "pick off" lead plaintiffs in class actions. Plaintiff Luman received his refund two months before he filed the original complaint. Nothing suggests defendants could have known at the time that he would seek to become a putative class representative. Amkraut received his refund on May 13, 2013, only three days after joining in the First Amended Complaint on May 10. (Mayer Decl. ¶ 11.) May 10 was the same day he sent his CLRA letter. (FAC ¶ 107.) Nothing in the record suggests defendant NAC issued Amkraut's refund for reasons distinct from those motivating the refund sent to plaintiff Luman before this action began.

In addition, unlike the plaintiff in *Pitts*, whose claim the court assumed was mooted by an unaccepted offer of judgment tendered six months into the case while discovery was underway, plaintiffs here received refunds after sending letters seeking monetary relief. This fact further distinguishes the defendant's tactics in *Pitts* from the actions of defendants here. Plaintiffs Luman and Amkraut each demanded in their CLRA letters that NAC "correct, repair, replace or otherwise rectify the goods alleged to be in violation" of the CLRA. (FAC ¶¶ 106–107.) Whether plaintiffs intended to solicit a refund by sending these letters or were simply ensuring they complied with the CLRA's exhaustion requirements, they were required to send CLRA pre-suit letters only if they intended to seek monetary relief. CAL. CIV. CODE § 1782(d). NAC provided relief by sending refunds, thereby obviating the need for plaintiffs to seek through the courts a less efficient resolution of their monetary claims. *See* CAL. CIV. CODE § 1760 ("This title [establishing the CLRA] shall be liberally construed and applied to

promote its underlying purposes, which are to protect consumers against unfair and deceptive

business practices and to provide efficient and economical procedures to secure such

protection.").

Both plaintiffs' monetary claims are moot and cannot relate back to the filing of

their complaints.  Because plaintiffs do not have standing to seek compensatory damages, they

may not seek punitive damages.  *Kizer v. County of San Mateo*, 53 Cal. 3d 139, 147 (1991) ("In

California, as at common law, actual damages are an absolute predicate for an award of

exemplary or punitive damages.").

B.      Injunctive Relief

Defendant NAC argues plaintiffs also lack standing to seek injunctive relief

because plaintiffs do not allege they intended to purchase SBP in the future.  (ECF 16-1 at 6–

7.)  Plaintiffs not entitled to seek injunctive relief themselves may not represent a class seeking

that relief, defendant asserts.  (*Id.* at 6 (citing *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037,

1045 (9th Cir. 1999)).)  Plaintiffs counter that courts permit class action plaintiffs to pursue

injunctive relief despite having no intention of purchasing a product in the future.  (ECF 24 at

5.)  Plaintiffs cite among other cases *Henderson v. Gruma Corp.*, No. CV 10–04173 AHM

(AJWx), 2011 WL 1362188, at *7–8 (C.D. Cal. Apr. 11, 2011), in which the court found that

plaintiffs suing under consumer protection laws need not demonstrate imminent injury because

"a plaintiff who had been injured would always be deemed to avoid the cause of the injury . . .

and would never have Article III standing."

Plaintiffs here do not have individual Article III standing to seek injunctive

relief.  Article III requires that a plaintiff seeking injunctive relief show he is "'realistically

threatened by a *repetition* of the violation.'"  *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d

939, 951 (S.D. Cal. 2007) (quoting *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006)

(original emphasis)).  Plaintiffs do not plead they continue to be misled by defendants'

advertisements, nor do they plead any facts indicating they are likely to be misled again.

Instead, plaintiffs' allegations that defendants have deceived them suggest that the probability

they will be injured again by defendants' alleged deception is infinitesimal.  *See McNair v.*

1    *Synapse Grp. Inc.*, 672 F.3d 213, 225 (3d Cir. 2012) (declining to find plaintiffs had standing to

2    seek injunctive relief for deceptive advertising because, "speaking generally, the law accords

3    people the dignity of assuming that they act rationally, in light of the information they

4    possess").

5            The inherently transitory exception to mootness cannot resurrect this class action

6    because plaintiffs' claims for injunctive relief were moot by the time they filed their

7    complaints.  As noted above, under *Pitts*, class certification can at best relate back to the filing

8    of the operative complaint.  653 F.3d at 1091.  In the leading transitory claim case of

9    *Gerstein v. Pugh*, 420 U.S. 103, 106 (1975), upon which the *Pitts* court relied, the plaintiffs

10    were still held in pretrial detention, a condition for which they sought injunctive relief when

11    they filed their complaint.  The Court held their class action was not mooted by their

12    subsequent release from pretrial detention before their claims could be litigated because pretrial

13    detention is inherently transitory and the plaintiffs could be re-detained.  *Id.* at 110 n.11.  Here,

14    plaintiffs seek injunctive relief explicitly only in their sixth cause of action under the CLRA,

15    which prohibits among other things misrepresenting a product's qualities or characteristics.

16    (FAC ¶¶ 103–108.)  Moreover, the basic premise of plaintiffs' complaint, upon which all their

17    claims rely, is that SBP does not safely and effectively treat the symptoms of BPH as

18    advertised.  (*See id.* ¶ 43.)  Plaintiffs, by their own admissions in the First Amended Complaint

19    that they became aware of defendants' deceptive advertising and sent CLRA pre-suit letters,

20    ceased being injured by defendants' conduct before filing their First Amended Complaint.

21            The court is not persuaded otherwise by the decisions of some district courts in

22    this Circuit that have permitted consumer class action plaintiffs to pursue injunctive relief

23    despite the lack of a realistic threat of repeated harm.  One court has reasoned it would be

24    perverse to permit a wrongdoer to "evade the court's jurisdiction so long as he does not injure

25    the same person twice," *Henderson*, 2011 WL 1362188, at *7 (citation and quotations omitted).

26    However, Article III's "case and controversy" requirement is not subjugated to such

27    understandable sympathies.  Nor is it material that denying standing to such plaintiffs in federal

28    court would "eviscerate the intent of the California legislature in creating consumer protection

1    statutes because it would effectively bar any consumer who avoids the offending product from

2    seeking injunctive relief." *Koehler v. Litehouse, Inc.*, No. CV 12–04055 SI, 2012 WL

3    6217635, at *6 (N.D. Cal. Dec. 13, 2012).  Federal courts are, and have always been, courts of

4    limited jurisdiction.  California courts are available to provide the injunctive relief plaintiffs

5    here seek.  *See Cattie*, 504 F. Supp. 2d at 951–52 ("If this Court lacks jurisdiction to enjoin

6    Defendants or give declaratory relief, consumers in Plaintiff's position may yet be able to split

7    their claim and seek injunctive relief in state court.").

8            As still other district courts have found, and as this court does now, if

9    "*Henderson* and other cases purport to create a public-policy exception to the standing

10   requirement, that exception does not square with Article III's mandate." *Delarosa v. Boiron,*

11   *Inc.*, No. SACV 10–1569–JST (CWx), 2012 WL 8716658, at *5 (C.D. Cal. Dec. 28, 2012).

12   The court in *Mason v. Nature's Innovation, Inc.*, a case in which a plaintiff sought injunctive

13   relief under the CLRA, UCL and FAL, recognized the split among the various district court

14   opinions on this question.  No. 12cv3019 BTM(DHB), 2013 WL 1969957, at *2 (S.D. Cal.

15   May 13, 2013.)  The *Mason* court analyzed the Ninth Circuit's decision in *Chapman v. Pier 1*

16   *Imports, Inc.*, 631 F.3d 939, 949 (9th Cir. 2011), which established the standing requirements

17   for plaintiffs seeking injunctive relief under the Americans with Disabilities Act ("ADA").

18   Noting that *Chapman* requires ADA plaintiffs to demonstrate either deterrence from returning

19   to a noncompliant facility or that they intend to return to the facility and will therefore likely

20   suffer repeated injury, the court found "[i]f an ADA plaintiff must demonstrate likely injury in

21   the future, consumer plaintiffs such as the one in this case must as well."  2013 WL 1969957, at

22   *4.  Because the plaintiff in *Mason* alleged the product had no efficacy, future injury was

23   unlikely, and the court held he could not seek injunctive relief in federal court.  In doing so, the

24   court in *Mason* noted, appropriately, it is "not within the Court's authority to carve out an

25   exception to Article III's standing requirements to further the purpose of California consumer

26   protection laws."  *Id.* at *5.

27          Plaintiffs lack standing to pursue injunctive relief.

28   *////*

III.   <u>CONCLUSION</u>

    For the foregoing reasons, defendants' motions to dismiss are GRANTED. (ECFs 16, 20.) Plaintiffs' First Amended Complaint is dismissed in its entirety. Plaintiffs' pending motion to appoint class counsel is DENIED as moot. (ECF 8.) This case is CLOSED.

    IT IS SO ORDERED.

Dated: February 3, 2014.

_____
UNITED STATES DISTRICT JUDGE